HENRY METCALFE et al.

*v.*

GEORGE COLLES.

GEORGE W. COLLES

*v.*

HENRY METCALFE et al.

1. A testator directed that certain specified advancements to his sons should be taken into account in settling their respective shares. The executor inventoried those amounts and also other advances made to those sons by the

Metcalfe *v.* Colles.

testator after executing his will.—*Held*, that the executor was not entitled to commissions on either advancement.

2. After commissions had been allowed on certain moneys that came into the executor's hands, he paid out those moneys for insurance premiums, which were afterwards repaid him by the insurance company.—*Held*, that he could not be allowed a commission thereon again.

3. For the purpose of settling the estate, power to sell all of testator's lands was given to the three executors, only one of whom proved the will. Afterwards he, as devisee and executor, joined the other executors and devisees in a sale and conveyance of all testator's lands, and stipulated therein that it was not necessary or advisable to execute the testamentary power.—*Held*, that he was not entitled to commissions on the purchase-money.

4. The considerations stated which control the court in fixing the amount of an executor's commissions on a large estate.

On appeal from the Morris county orphans court.

*Mr. George W. Jenkins*, for Metcalfe and others.

*Mr. Joseph F. Randolph* and *Mr. Theodore Little* for George W. Colles.

THE ORDINARY.

These cases are cross appeals from a decree of the orphans court of Morris county, which was made on the 21st day of December, 1886, by which the allowance of commissions to an executor is brought in question. The will of James Colles, deceased, and a codicil to it were admitted to probate on December 4th, 1883. James Colles, George W. Colles and John Taylor Johnston were appointed by the will its executors, but George W. Colles alone qualified and took the burden of administering the estate.

By the will the testator devised and bequeathed all his estate, real and personal, to his children, James, George, Frances, who is the wife of John Taylor Johnston, and the children of a deceased daughter, Augusta, who was the wife of John T. Metcalfe, in equal shares. Mrs. Metcalfe's children are named Henry, Gertrude, Loyall and Francis. The testator directed that his executors, in the settlement of the estate, should charge the

share of his son James $48,000 and the share of his son George $8,000, to adjust claims and demands he had against them respectively, and for the purposes of that settlement should compute these amounts as part of the estate.

For the purpose of making settlement of the estate, he gave his executors authority to sell the whole or part of his real estate. By the codicil to his will he directed that an annuity of $450 be paid to a family servant, if the net income of his estate should exceed $16,000 a year, and if it should be less than that sum, that the annuity be proportionately reduced. The servant, died shortly after the testator.

The executor filed an inventory of the personal estate, in which he included the amounts to be charged to his brother James and himself. He not only inventoried the $56,000 mentioned, but also $14,721.43, further advances made by the testator to James, after the execution of the will, and $2,050, further advances by the testator to him (the executor) after the will was executed. The total appraised value of the inventoried personal estate, including these advances, was $168,633.12.

Later, the devisees under the will, including the executor, agreed upon a division of the real estate, taking into account the advancements to James and George, which were mentioned in the will, and subsequently by deed, to which they all were parties, executed that agreement. All the executors named in the will were parties to the deed, James and George in their own right as devisees, and John Taylor Johnston in the right of his wife. Each of these deeds recited, among other things, that the funeral expenses and debts of the testator had been paid; that the servant, Mary McBride, was dead; that her annuity had been fully paid and discharged, and then, in the language following:

"That said agreement for settlement, division and conveyance has been made with the consent, approbation and co-operation of the said executors, and it is not necessary and advisable, in order to facilitate the settlement of the estate of the said testator, or for any other reason, that the said executors sell or dispose of any of the real estate which is hereinafter particularly described, and it is hereby so declared by the said executors who are all individually parties to this indenture."

Metcalfe v. Colles.

In order to carry out the agreement above referred to, the several pieces of real estate were valued, the aggregate of the values being $178,000.

In his final account, the executor charged himself with the amount of the inventory, $168,633.12, the value of real estate, as agreed upon by the devisees for the purpose of division, $178,000, and sundry other receipts amounting to $45,065.63, making the total charges $391,698.75.

He asked the orphans court for commissions upon this total, and was allowed commissions on $155,419.18 at the rate of four per centum.

The orphans court ascertained the amount upon which it allowed commissions by striking from the total charges in the executor's account, the value of the real estate, $178,000, the advancements mentioned in the will, $56,000, and the advances to the executor after the execution of the will, $2,050, and some rebatement from insurance premiums which had been originally paid by the executor, amounting to $229.47.

The executor appeals because he claims that he should have been allowed commissions upon the total charges in his account and because he claims that the sum allowed him, $6,216.77, is not adequate compensation for his services. On the other hand, Henry Metcalfe and his sisters appeal because they regard the allowance to be in excess of adequate compensation.

The real estate was devised by the testator to his children subject to its forming part of the entire estate to be divided among them by the executors, and subject to the power of the executor to sell it, or portions of it, if it should be necessary to do so in order to effectuate the division or pay the debts.

The debts were paid from the personal estate, and the division of the real estate was surrendered to the devisees, and accomplished by them by agreement, followed by conveyance. The executor joined in this conveyance as devisee, and therein declared, as executor, that it was not necessary to sell the real estate in order to carry out the provisions of the will.

I do not think that the real estate can be said to have come to his hands in the sense contemplated by the statute. This is

not like the transference of a security to a distributee in the
place of money, for there the executor's duty with reference to
the security is performed. Although the security itself is not
reduced by him to cash, it is administered. In the case in hand,
the executor's only duty touching the real estate was to deal
with it in the distribution which the will contemplated he
should make. He did not perform that duty, preferring to sur-
render the distribution of the real estate to those who were in-
terested in it, and thus avoid a difficult task.

It was obviously the intention of the testator that the claims
against the sons should be treated as advancements to them, and
should not be collected by the executor. He fixed the indebt-
edness of his sons at certain figures, $48,000 in the case of
James and $8,000 in the case of George, and directed these
amounts to be estimated as part of the estate for the pur-
pose of ascertaining what each share of the estate should
amount to, and then that they be deducted from the shares of
the estate to which his sons should be respectively entitled.
These amounts did not in fact come to, and were not intended
to come to, the hands of the executor. They were simply to
be treated as figures, and have their place in the calculation
upon which the distribution of the estate was to be based. Also
the amounts that were inventoried by the executor as advance-
ments made by the testator after the execution of the will were
not to be collected by the executor, but were simply to be used
in his calculation for distribution, for an advancement made in
the lifetime of the testator or intestate is not part of the estate
to be administered upon. *Black* v. *Whitall, 1 Stock. 572.*

The deduction of $229.47, rebatement from insurance pre-
miums, is not disputed, because it was money that had been
received by the executor and afterwards paid out by him for in-
surance and then repaid to him by the insurance companies. To
allow commissions on it, it is admitted, would be to allow
double commissions.

The principal inquiry, in adjusting the commissions to be
paid to an executor, is as to his actual pains, trouble, services
and risk in settling the estate, and what is a just compensation

Metcalfe v. Colles.

for them, and then, secondarily, what sums have come to the executor's hands. The latter inquiry is necessary to enable the court to keep the allowance within the limitation prescribed by law.

In this case the executor's office was not a laborious one. He employed lawyers, brokers, agents and servants to perform most of the work which was required of him, and paid them liberally and without objection, from the estate. His individual work was, in the main, confined to a general supervision and direction of those subordinates, and to the keeping of his accounts. The employment of counsel spared him much of the mental labor which he, as a lawyer, was capable of performing. In *Pomeroy* v. *Mills, 10 Stew. Eq. 578*, an important circumstance regarded in fixing commissions was that one of the executors brought his professional skill as a lawyer to bear upon the settlement of the estate, and thus rendered it unnecessary to invoke other legal assistance. In that case, where the receipts were about $500,000, less than $10,000 was thought to be a reasonable compensation for both the executors. Precedents in allowances of commissions to executors, however, afford but little assistance in fixing compensation. Each case must depend upon its own circumstances and be tested and controlled by the criterion intended by the statute—compensation. In this case the compensation fixed by the orphans court was reasonable and just. It was not in excess of the limit fixed by the statute, if the sum upon which the percentage was to be calculated was justly placed at either $155,418.18, or an amount, $14,721.40, below that sum. It matters little, then, in this case, whether the value of the real estate and the claims of the testator against his sons have been included in the sum upon which the percentage for commissions was allowed. To increase the sum would necessitate a reduction of the percentage, because the allowance must not exceed compensation, which in this case, as above stated, is $6,216.77.

The decree of the orphans court as to the amount of the compensation to be allowed to the executor ($6,216.77) will be affirmed, with costs.