HENRY A. FLUCK and JACOB R. WERT, executors of the will of George A. Rea, deceased,

*v.*

W. HOWARD LAKE, administrator *pendente lite* of the estate of George A. Rea, deceased.

1. Where an administrator *pendente lite* holds stock of a railroad company which he does not need to convert into money to enable him to execute his trust, he will be justified in selling it only when he acts in so doing upon an honest and well-founded apprehension, predicated upon the exercise of reasonable care and caution, that to longer hold it will endanger or prejudice the estate.

2. One holding moneys in trust, who makes use of them for his own purposes or suffers them to remain idle when they should be invested, will be charged interest upon them or held accountable for the profits made from their use.

3. Commissions to an administrator will be rated within statutory limits in accordance with the actual pains, trouble and risk which his faithful performance of his duty has caused him; but no commissions will be allowed to him when he makes use of moneys belonging to the estate for his own purposes, and keeps meagre and inaccurate accounts, thereby involving the estate in expensive litigation. Nor will payment of the charges of his counsel in such litigation be allowed from the estate.

---

On appeal from a decree of the Hunterdon county orphans court upon the settlement of account of W. Howard Lake as administrator pending contest of the will of George A. Rea, deceased.

Fluck *v.* Lake.

The appellants claim that the decree is erroneous because it does not charge the accountant a greater sum than $6,388.25 for two hundred and two shares of the capital stock of the Lehigh Valley Railroad Company which he sold in August, 1893, and does not charge him with a greater sum than $352.50 for interest upon moneys of the estate which he suffered to lie idle or used for his private purposes, and because it allows him $625.97 for commissions as administrator and allows to his counsel $280 for their services upon the hearings upon the exceptions which were filed to his account, and because it allows to the counsel of another exceptant than the appellants, Nora Closterhouse, $140.

*Mr. John A. Bullock,* for the appellants.

*Mr. John N. Voorhees,* for W. Howard Lake.

THE ORDINARY.

The evidence shows that the par value of the stock of the Lehigh Valley Railroad Company was $50 per share; that in June, 1892, when the administrator, Lake, inventoried it and had its value appraised, it was worth $58.50 per share; that in the summer of 1893, a dividend or dividends having been passed, its value fell to ten or twenty per cent. below par; that during the summer of 1893 Lake repeatedly declared to one of the appellants that he did not propose to sell the stock but would hold it and turn it over to the permanent representatives of the estate; that in May, 1893, he contracted to purchase from one Casterline a hotel, at a place called High Bridge, for $10,000, $4,000 of which would be represented by a mortgage for that amount, subject to which Lake was to take the property, and $6,000 of which Lake was to pay in cash; that the time fixed for the performance of this agreement to purchase was the 1st of September, 1893; that during July and August Lake endeavored to borrow the $6,000 needed for the cash payment; that on the 29th of August, without previous conference with the appellants or either of them, the accountant, accompanied by his counsel, went to the office of the Lehigh Valley Railroad Company, in

Philadelphia, and there consulted two gentlemen whom, I infer, were officers of the company, and after talking with them and being advised by his counsel to sell the stock, went to a firm of brokers and had it sold for $31.75 a share, which was its market value on that day; that although he had accounts as administrator in two banks in Flemington, he deposited the brokers' check for the proceeds of the sale of the stock, on the 31st of August, in a bank at Lambertville, in his individual name, and on the same day drew upon that bank his check, to the order of himself, for $5,000 and had it certified by the bank, and on the next day, September 1st, took the certified check to Clinton and there, at the Clinton National Bank, received for it that bank's check for $5,000, payable to his own order, and $500 in cash, which last-mentioned check he endorsed to Casterline as part payment for the hotel, and which $500 in cash he expended to Casterline in buying personal property in use at the hotel; that the remainder of the proceeds of the sale of stock was appropriated by him for his own purposes.

The appellant's argument, from these circumstances, is that, failing to borrow the $6,000 he needed to enable him to carry out his agreement with Casterline, Lake determined to sell the stock he held as administrator and use the proceeds of sale for that purpose, and, at the same time, to put himself in position to claim that he exercised due care and an honest discretion in the sale, and thereby to justify his action if it should thereafter be questioned, he took with him to Philadelphia his counsel and with his counsel went to the railroad office to inquire about the stock; also that, after the sale, in order that his use of the proceeds of his sale might not be known, he deposited the brokers' check in the Lambertville bank, and took from that bank a check which he exchanged at the Clinton bank for its check and $500 in cash, and then gave the check of the Clinton bank and the cash to Casterline.

The circumstances proved show a measure of clandestinity in the procedure of Mr. Lake, which stands in marked antagonism to the truth of his professions of good faith and concern for the

interests of his trust, and leads to the belief that his testimony is not to be relied upon.

The inference which the appellants' argument invokes is, at least, strong enough to create serious doubt as to the good faith of the administrator in making the sale, and to call for the full and clear disclosure of the information and conditions which induced his action, not from his mouth alone, but by the oaths of other witnesses who may show themselves to be entitled to belief. Here is presented an administrator *pendente lite*, who did not need to sell the stock to pay debts, who could not make distribution of the proceeds of such a sale (*Benson* v. *Wolf*, *15 Vr. 78*), selling without previous conference with the permanent representatives of the estate for little more than half the inventory valuation of the stock, under circumstances of self-interest which must have strongly influenced his judgment and tended to sway him from fidelity to his trust, and then virtually secreting the fact of the sale by hiding away the proceeds thereof. To justify any sale of this stock he should show that he acted upon an honest and well-founded apprehension, predicated upon the exercise of reasonable care and caution, that to longer hold the stock would endanger or prejudice the estate either by permanent decline in its value or by serious or permanent loss of income therefrom. *Green's Case, 10 Stew. Eq. 254.*

The burden of proof rests upon him, for the matter is, in effect, discharged from that with which, in his accounting, he must be charged the inventory valuation. It may be possible that a reasonably prudent and cautious man would have sold as he did, but as his sale is tainted by motives of self-interest and was accompanied by secrecy, much more is needed to satisfy a court of its propriety than his unsupported testimony that he acted in good faith.

It is difficult to say what he should be charged for the stock. He should be held accountable, at the least, for the amount he received for it, and, I think, also for the difference between that price and a higher price at which a reasonably careful and prudent trustee, influenced by an honest intent to serve only the best interests of his trust, would have sold it for. If such a

41

trustee would not have sold it at all prior to the accounting, then he should be charged with the price he realized for the stock and whatever additional sum would be required to raise the price realized to the market value at the time of the accounting.

The proofs do not enable me to deal, in a satisfactory manner, further with this matter. It must go back to the orphans court, where opportunity must be given the accountant to supplement his proofs. If he fails for any reason to do so, he should be charged the difference between the amount he realized at his sale and the inventory value of the stock, for it does not appear that the stock was not, at the accounting, worth the inventory value.

The second objection to the decree is that the administrator should have been charged a greater sum than $352.50 for interest upon moneys of the estate which he used for his private purposes.

It is apparent from a comparison of the account which the administrator rendered to the court, with his bank account as administrator, that he never at any one time had all the estate's moneys, with which he was chargeable, in bank to his credit as administrator. He has failed to give any satisfactory explanation of this circumstance. He has not even pretended to tell what disposition was made of the moneys which were not so deposited.

An examination of the debit and credit sides of his account demonstrates that, in June, 1892, he commenced his trust with upwards of $2,400, and that his subsequent receipts maintained the surplus in his hands, over his disbursements, at upwards of $2,200 at all times until August, when the surplus rose to more than $5,400, and September, when it was in excess of $5,900, and October, when it exceeded $7,100, and November, when it further increased to more than $7,700, and so remaining till in January, 1893, it passed $8,000, and in April, ten months after his appointment, it reached nearly $11,000. In that month he paid a debt of the estate amounting to about $6,000, and thus had the surplus reduced to about $5,000. Other receipts were had and other allowed disbursements were made, until late in July the surplus stood at a little more than $3,500, the lowest

Fluck v. Lake.

amount since the 1st of August, 1892.   His subsequent receipts, exclusive of the proceeds of the sale of the Lehigh Valley Railroad Company stock, were in excess of $1,400, and his subsequent disbursements were less than $3,200, leaving him, at the accounting, a surplus of some $1,700 over the proceeds of sale of the railroad company stock.

For the purpose of paying debts or making other legitimate disbursements, the sale of the Lehigh Valley Railroad Company stock was not requisite, nor does he pretend that it was.   At the end of November, 1893, when he was chargeable with more than $8,000, he had less than $50 in bank to his credit as administrator.   Confessedly he used the entire proceeds of sale of the Lehigh Valley Railroad Company stock, and, I think, more than that sum, but precisely how much and at what times and for what periods, has not been made clear by the proofs.

I have no doubt of the justness of charging him interest upon the proceeds of sale of the railroad company stock from their receipt to the date of the decree in the accounting, and, resting there, interest on the balance of account until its payment to the appellants.   Under the proofs, I cannot, with certainty of doing justice, charge him more.

The interest upon the proceeds of the sale of the railroad stock, to the date of the decree of the orphans court, amounted to $374.93, a sum which is a little in excess of the interest charged him by the orphans court.

He is chargeable with that interest not only because he used the money upon which the $374.93 is calculated in his own affairs, but also because it was to the interest of the estate he managed, that such money, immediately upon its receipt, should have been put where it would have yielded an income.   As I have said, Mr. Lake was an administrator *pendente lite*, appointed to preserve the estate and without power to distribute.   When the railroad stock was sold the will contest was pending in the court of errors and appeals.   The sale was made more than two months before the argument of the case before that court was possible.   If he did not invest, he should, at least, have applied to the orphans court for direction as to his duty in dealing with

the money. *Rev. p. 777 § 113; Hetfield* v. *Debaud, 9 Dick. Ch. Rep. 371.* He was in a situation where he should not have suffered the moneys to lie idle without the sanction of the orphans court, and should not have mingled them with his own funds or used them for his own purposes. *King* v. *Berry, 2 Gr. Ch. 261; Frey* v. *Demarest, 2 C. E. Gr. 71; McKnight's Exrs.* v. *Walsh, 8 C. E. Gr. 136; S. C. on appeal, 9 C. E. Gr. 498; Frost* v. *Denman, 14 Stew. Eq. 47; Hetfield* v. *Debaud, supra.* If it had been made to appear that in the use of the money he made profits greater than the interest thereof, he would have been chargeable with those profits. *McKnight's Exrs.* v. *Walsh, supra.*

The appellants further object to the allowance of any commissions to the accountant. The orphans court allowed commissions at the highest rate permitted by the statute. The accounts this administrator kept were meagre and replete with inaccuracies and errors. His testimony respecting his conduct in the management of the estate was vague and unsatisfactory and entirely without support in its professions of his care, prudence and good faith in the sale of the railroad company stock. He used a large part of the moneys belonging to the estate for his private purposes. His conduct has led to confusion and has thrown the estate into an expensive litigation.

Commissions are allowed as compensation for the faithful discharge of duty, and their rate, when they are allowed within fixed limits, is determined by reference to the actual pains, trouble and risk involved in the performance of that duty. *Rev. p. 776 § 109.*

In such a case as this the authorities are clearly against the allowance of any commissions. *Frey* v. *Demarest, McKnight's Exrs.* v. *Walsh* and *Hetfield* v. *Debaud, supra; Blauvelt* v. *Ackerman, 8 C. E. Gr. 495; affirmed on appeal, 10 C. E. Gr. 570; Dufford* v. *Smith, 1 Dick. Ch. Rep. 216.*

The services of the administrator's counsel at the accounting were made necessary by the same shortcomings and misconduct which deprive the administrator of commissions, and I do not think the estate should be mulcted to pay these counsel fees. The allowance of them should have been denied.

Fluck *v.* Lake.

I do not perceive sufficient reason for interfering with the allowance to counsel of the exceptant, Nora Closterhouse. It is insisted that her exceptions were filed in interest of the accountant, but I do not find that this insistment is sustained by the proofs.

The decree will be reversed and the record will be remitted to the orphans court, in order that additional proofs may be taken and a new decree may be made, in harmony with the views I have expressed.