MARY A. GILLIGAN et al.

v.

JOHN K. DALY et al.

[Decided August 4th, 1911.]

1. While a guardian's neglect to file accounts will be given due weight in determining whether he should be allowed compensation, there is no absolute rule in the matter, and, where a guardian of minors was appointed on February 1st, 1899, kept regular accounts with vouchers for disbursements, and was always willing to submit them to inspection, his delay in filing formal accounts until 1911, when he annexed his account to his answer in an action for an accounting, was not so unreasonable as to deprive him of the statutory compensation.

2. In continuing decedent's business without authority, an executor assumes the risk of loss therein from any cause, including payment for his services or additional expense in settling his accounts.

3. As a rule, the beneficiaries may either charge an executor continuing decedent's business without authority with the value of the estate and interest, or, at their option, with the net profit realized ; they being entitled to an accounting of profits to determine which they shall do.

4. In estimating the net profits of a business continued by an executor without authority, in order to charge him therewith, only profits resulting from the employment of testator's estate should be considered, making allowance for the business skill and credit of the executor in conducting the business.

5. In ascertaining the net profits of a business conducted by an executor without authority after decedent's death, compensation for his services in conducting the business may be allowed as expenses and deducted from the profits of the business, if the business is not conducted at a loss.

6. Where an executor continues decedent's business without authority, the legatees cannot be required to pay him compensation for services in conducting the business, or expenses in settling its accounts, including counsel fees incurred by litigation necessary in settling the accounts, from property other than that coming into his hands.

7. The settling of the accounts of a business continued by an executor without authority after testator's death is properly made in the chancery court rather than in the orphans court, especially where the executor claims payment for his services in conducting the business, and asks a personal decree against the legatees for payment of any deficiency.

8. Where a business continued without authority by an executor after testator's death, though mortgaged, had a substantial value when taken over by him, but was afterwards sold by him for a nominal price, the executor would be chargeable for any future claim on the mortgage debt if the purchaser did not assume it.

9. Beneficiaries under the will are entitled to offset their claim to a fair rental value of premises connected with a business continued by the executor without authority against payments made by him for the benefit of the estate by continuing the business.

On bill for accounting. On exceptions to master's report.

*Mr. John J. Mulvaney,* for the exceptants.

*Messrs. Collins & Corbin,* for the defendant Gallagher.

*Mr. Charles M. Egan,* for the defendant Daly.

EMERY, V. C.

This is a bill for accounting filed by Mrs. Gilligan and Thomas Boylan, two of the children and legatees of Mary E. Boylan, against defendants Daly and Boylan, executors of testatrix, and also against the defendant Dennis Gallagher, guardian of all the children. Matthew and Irene Boylan, the two other children, and legatees, are also parties defendant. At the time of her death the testatrix was carrying on the undertaking business in Jersey City on property on Pavonia avenue belonging to her and she lived in another of her houses on Ninth street. Testatrix owned another lot on Henderson street with a stable thereon. All four children were minors at testatrix's death February 1st, 1899, the ages of the children being then, respectively, about twenty, seventeen, fifteen and twelve years. Complainant Mrs. Gilligan had been recently married. The defendant Daly, the brother of testator, assumed sole charge of the administration of the estate, as acting executor, and continued the business. This was done, as he says, at the verbal request of his sister just before her death, and for the purpose of keeping the young family together and aiding in their support. The will did not authorize or request the continuance of the busi-

ness. The business was carried on by the executor in the name of M. J. Boylan, the husband of the testatrix, who had originally established it, and in the name under which testatrix had carried it on since her husband's death in 1891. The business continued until June, 1907, when it was sold by the executors and purchased by or for the benefit of defendant Matthew, who had been employed for some years by the executor in carrying it on. The value of the goods and chattels used in connection with the business received by the executors was about $1,838, as valued in the inventory, the same being subject, however, to a chattel mortgage held by the National Casket Company for about $1,800. At the time of the sale in 1907 the mortgage had been reduced by payments made from the business to about $1,000, and the entire property, subject to the mortgage, was sold to the purchaser for one dollar, the mortgage so far as appears not being assumed by him. The residue of the chattels realized $139 at the sale, being purchased by the solicitor of the executor and Matthew. The depreciation in value of the stock (assuming that the purchaser is to pay the balance due on the mortgage) by reason of its continued use in the business, is thus an amount about equal to the payment on the mortgage. The business was continued by the executor, not for his own personal benefit, but with the object of benefiting the family. The executor himself, for the purpose of keeping the family together, and at the request of the older children, removed to the homestead house and occupied a portion of it, paying to the guardian what seems to have been a fair rent for the portion occupied by himself and his family. For some years after the mother's death the younger children, except Thomas, lived with the oldest, Mrs. Gilligan. Thomas was employed in the business, but for a short time only. The daughter Irene also assisted, and Matthew, the younger son, was employed from his sixteenth year, became the manager of the business, and finally became the owner of it. No account had ever been filed by the executor, and in connection with a bill filed by the complainants for partition of the real estate, after the sale of the business, this bill for accounting by the executor is filed. The executor Daly had kept books of account in the course of the

business, showing its receipts and disbursements, and in the fall of 1906, on complainants' demand for an accounting, a general statement taken from these books was made, and some examination of the books was made by or under the direction of complainants. This examination apparently was at the complainants' own expense. On the present bill for accounting the executor did not submit any account with his answer. The defendant guardian annexed his account to his answer. Reference to a master was ordered both in the partition and accounting suit, to state the executors' and guardian's accounts, and also accounts as between the children. The statement of the executors' accounts involved the production and examination of the books of accounts of the business, and testimony in reference to the conditions of carrying it on. The master reported that the business was carried on without authority, but that it was not carried on by the executor for his personal benefit or profit, but with the intention of benefiting the estate in the general interest of the family. He reported further that the carrying on of the business had not resulted in any loss to the estate, but, on the contrary, had been for the benefit of the estate to the extent of about $2,250 by payments made for the benefit of the estate, viz., $942.08 on account of the chattel mortgage, $600 on account of a real estate mortgage on the Ninth street and Henderson street properties, and $800 paid to or for the benefit of the children— $200 each. He also finds that in carrying on the business the executor himself advanced money necessary to pay current bills and himself supervised the business. In keeping the accounts the executor had made no charge for his services, but in stating and reporting the accounts the master while allowing to the guardian commissions according to the statutory rate, reports as to the executor, that after due consideration he fixes his commission at $600. He further allows to the counsel of the executor and of the guardian $250 each. The counsel for the executor is also the counsel for the defendant Matthew Boylan and for the guardian *ad litem* of the infant defendant Irene Boylan, who now lives with her uncle, the executor. No counsel fee was allowed to the complainants. Several exceptions were filed to the master's report, but complainants have formally waived all the

exceptions but those relating to the commissions and counsel fees.

As to the guardian's account, the objection is that not having regularly made and filed his accounts, he is not entitled to any commissions or allowances. While the neglect or omission to file accounts will always be given due weight in considering all the circumstances, there is no hard and fast rule that the mere omission to file them disentitles the guardian to compensation. *Wilson* v. *Staats, 33 N. J. Eq. (6 Stew.) 524; In re Barcalow (Chancellor Runyon, 1877), 29 N. J. Eq. (2 Stew.) 282, 285; Burkholm* v. *Wardell (Chancellor Runyon, 1886), 42 N. J. Eq. (15 Stew.) 337; 11 Am. & Eng. Encycl. L. (2d ed.) 1284.* In this case the guardian seems to have kept regular accounts with vouchers for disbursements, and to have been ready to submit them for inspection, and the delay in the general settlement of the accounts, while not regular, was not so unreasonable as to deprive the guardian of his statutory compensation. The allowance did not exceed the statutory fees and the exceptions to such allowance as well as to the counsel fees allowed to the guardian, which appear to be reasonable, are overruled.

The commissions allowed to the executor stand on a different basis. The statute, Orphans Court act (*Rev., P. L. 1898 p. 762 § 129*), provides that the commissions of executors, &c., shall not exceed the following rates: "On all sums that come into their hands not exceeding $1,000, seven per centum; if over $1,000, and not exceeding $5,000, four per centum, on such excess," &c. The entire amount of the personal property which came to the executor and as inventoried was less than $3,000, and had this entire amount passed through the executor's hands, the commissions to which the estate of deceased as it was at her death would have been subject, was not over $150. In carrying on the business, the executor clearly acted without authority, not only because of the general rule relating to the administration of estates, but also because all of the legatees were infants, incapable of consenting to the continuance, and one of them is still an infant. One risk which an executor takes in such continuance of business is that the estate shall suffer no loss therefrom, and this indemnity against loss extends to loss by reason of running

the business as well from payments for service of the executor in carrying it on, or additional expenses in settling his accounts, as from any other cause.

Where an executor continues the business of testator under authority of the will, or merely for the purpose of winding up the business, his compensation for this service is included in his commissions as executor, and the basis for fixing commissions is not the gross receipts or expenses of the business, but the net income and the amount by which this increases the *corpus* of the fund, and cannot include a charge for services in continuing the business. *In re Merchants Case (Chancellor Runyon, 1885), 39 N. J. Eq. (12 Stew.) 506, 509; affirmed on appeal, 41 N. J. Eq. (14 Stew.) 349; Beard v. Beard (1893), 140 N. Y. 260, 264; 18 Cyc. 1150.* In the present case, the entire gross receipts of the business up to December 31st, 1907, according to the executor's accounts as presented to the master, were $69,152.64, and the entire disbursements were $68,574.36 (not including the executor's allowance or counsel fee), and if the executors' commissions be considered to stand on the same basis as if the business were authorized, there has been no increase of the *corpus,* but rather a diminution, unless the payments of $2,250, above referred to, be considered as additions.

But the right of the executor to compensation (*beyond* his statutory commissions on the amount of the estate coming to his hands) is based on other principles where the carrying on of the business is unauthorized. In such case the general rule is that the beneficiaries have the option to charge the executor either with the value of the estate and interest or with the amount of the net profits realized from the business. *3 Wms. Ex. \*1793; 1 Perry Trusts 430; 11 Am. & Eng. Encycl. L. (2d ed.) 975.* And the beneficiaries have the right to an account of the profits for the purpose of determining this option.

In estimating the profits, the general basis for charging trustees is, that, so far as ascertainable, they should include only the profits resulting from the employment of the testator's estate as capital, and due allowance should be made for other elements creating the profits, such as the business skill and credit of the executor carrying it on. *Willett v. Blanford (Vice-Chancellor*

*Wigram, 1842*), *1 Hare 253; 11 L. J. Ch. 182; Vyse* v. *Foster* (*C. A., 1873*), *L. R. 8 Ch. 309; 42 L. J. Ch. 245, 250; S. C.,* on appeal to house of lords, *44 L. J. Ch. 37, 47; 7 H. L. 318.* Compensation for executor's services may be allowed as part of the expenses of the business and be deducted in ascertaining the net profits with which he is chargeable, but in carrying on the business without authority, the executor is at the absolute risk that the estate which comes to his hands suffer no loss or diminution by reason of carrying on the business. If the executor can show that there has been no loss, but rather a benefit to the estate, then no liability to the estate results from his illegal action other than that of accounting for the profits or benefits received, and in so accounting for the profits or benefits received, he may be allowed proper compensation for his services in carrying on the business, and such allowance will be deducted from the profits for which he is to account. These seem to be the general principles on which allowances in these cases are based. It might happen, therefore, that the actual compensation to the executor in cases where the business was continued without authority, would sometimes be larger than where authorized, and therefore fixed by the statute, but it is to be considered—*first,* that in the former case the continuance of the business is at the personal risk of the executor's indemnifying the estate against loss, and also of being personally liable for debts, and *secondly,* that this court in enforcing the liability of trustees does not act as a court of penal jurisdiction or for the purpose of punishment, but only for the purpose of compelling restitution, or granting compensation for losses actually sustained. Lord James in *Vyse* v. *Foster, supra; 42 L. J. Ch. 251.* The indemnity to the estate against loss includes, in my judgment, protection of the legatees against being called on by the executor for payment from property other than that which came to the executor's hands, of any portion either of his compensation for services in carrying on the business or expenses of settling its accounts, including counsel fees incurred by reason of litigation necessary for the settlement of the accounts. The examination and settlement of the accounts of the business in this court rather than in the

orphans court was proper, especially in view of the fact that the executor on the settlement claims payment for his services rendered in carrying on the business, and should the amount claimed be allowed, he now asks a personal decree against the legatees for payment of the deficiency. In considering therefore whether the carrying on of the business has been a benefit to the estate, the additional expense of the litigation reasonably necessary in this court over the account must be charged as an expense of the business. The payments made for the benefit of the estate from carrying on the business must be examined from this point of view, and will be considered in their order as given in the master's report—*first,* the payment of $942.08 on account of the chattel mortgage. This payment is offset by the depreciation in value of the property covered by the mortgage. When taken by the executor it was valued at $1,740 (as appears by the executor's answer), and was sold in June, 1907, for one dollar, subject to the mortgage. Unless the purchaser assumed the mortgage, the executor still remains chargeable for the future claim on the debt secured by the mortgage. *Second,* the sum of $600 applied on the Daumont mortgage on the Ninth street and Henderson street properties, and *third,* the sum of $200 paid to each of the four children—$800 in all. These last payments to the children seem to have been made, not out of the business, but out of rents received after the business had ceased. As against the $600 and any other payments claimed to have been made for the benefit of the estate by carrying on the business, the children are clearly entitled to offset their claim to a fair rental for the premises. Rental is an expense of the business and should not be contributed by the beneficiaries. The guardian of the infants shortly after the death of the testatrix paid off with money received for the children from life insurance moneys, a mortgage of $3,500 which he himself had been carrying on the property, and from that time the property was unencumbered. The building on it was a frame building, built for a stable, but fronting on Pavonia avenue, a business street, and the front part of the building was fitted up for and used as an office in connection with the undertaking business. It had considerable rental value,

one witness (the only one on this point) estimating it at $50 per month. After the sale of the business in 1907, the executor Daly seems to have received as rentals from Matthew $30 per month for the property. During the time the executor carried on the business and up to July, 1907, no rent whatever was paid for the Pavonia avenue property, but from the business there was paid the taxes on the property, and water rents from 1902, amounting to $1,269.43. In the years 1899, 1900, 1901 and 1903, the guardian of the infants, according to his accounts, paid $198.10 for taxes, $52.50 for insurance, and about $60 for water rents, in all over three hundred dollars charges on the Pavonia avenue property. If these amounts be deducted from the amount stated to have been paid from the business for the benefit of the infants, it leaves the sum of $909.43, and $600 for the eight years the business was carried on to be offset against rents for the property. From June 26th, 1907, Matthew has been paying $30 per month for this property, a total of $840 up to the stating of the account (October 15th, 1909), and from this rent and rents received by the executor from other properties during the same interval, to the extent of $890, the executor, after closing out the business, has paid taxes and other charges and also the $800 to the devisees. These payments do not seem to have been made out of the business. That a rental of $200 per year above the taxes and water rents and insurance could have been received is so probable, that in the absence of clear evidence to the contrary, I am not willing to adjust the executor's account of the business as if he had proved satisfactorily that the carrying on of the business was a benefit to the estate pecuniarily. If the allowance of $600 as his compensation for carrying on the business be sustained, there is no benefit whatever to the estate, but, on the contrary, a loss, inasmuch as his compensation for carrying on the business and counsel fees rendered necessary in settling the business accounts must be paid by the children out of the proceeds of the sale of the lands devised to them by the testatrix, and which never passed through the executor's hands at all. Payment from this source would manifestly be a return or repayment by the devisees of any moneys received by them

from the business, and if allowed, charges them instead of the executor with a portion of the expenses for carrying it on. As the executor's account appears to stand, and on the evidence, it is not satisfactorily proved that the estate, up to this date at least, has benefited by the carrying on of the business, and inasmuch as the executor in taking this risk is bound to indemnify the estate against loss, I am not willing in this case to allow him compensation for his services in carrying on the business on the basis of proof of benefit. If the estate is relieved from the obligation of the chattel mortgage, he is entitled now, I think, to commissions on the value as fixed by the inventory, but inasmuch as the sale of the mortgaged chattels produced only one dollar, it is clear that nothing has passed through his hands on this account, unless by his sale he has procured the payment of the mortgage. The exception to the allowance of $600 compensation and to $250 counsel fee is therefore sustained.

This is without prejudice, however, to any application which may be made hereafter for an allowance to the executor out of the net profits resulting from the business. It appears by the executor's evidence that several thousand dollars of debts are uncollected. and he estimated (then) that $1,000 might be collected. For such collections he must hereafter account, and when the entire accounts of the business are closed, he may apply for compensation out of any profits appearing to have arisen. His compensation on this accounting must be limited to his statutory fees based on the inventory values, and be conditional on the estate being relieved from obligation under the chattel mortgage.