The petition of appeal filed herein brings up for review to the prerogative court two certain orders made by the Ocean *Page 656 
county orphans court on August 20th, 1924, one making an allowance of $8,000 to William I. Garrison, proctor for Hanora Larrabee, executrix of the estate of Edward F. Larrabee, the deceased executor under the last will and testament of Albert S. Larrabee, deceased, and the other making an allowance of $12,000 to Hanora Larrabee, executrix as aforesaid, for services performed by her deceased husband as executor of the estate of his brother, Albert S. Larrabee.
At the time of the death of Albert S. Larrabee, which was December 6th, 1912, he was engaged in a number of business enterprises in Lakewood, New Jersey, among which were a hotel, a farm and a general store, also a coal business conducted at the store. Under the terms of his will, his executor was directed to continue the hotel, farm and general store businesses "on such a scale, and for so long a time, during the minority of my two boys, as, in his discretion, would seem for the best interest of my estate." The testator left surviving him his widow, Rose McKee Larrabee, and his two sons, Bruce M. Larrabee and Albert S. Larrabee, Jr. At the time of his death his sons were aged, respectively, fourteen and twelve years. The will contains provisions for the payment to the widow of a portion of the net income of the various businesses semi-annually. Full power of sale of real and personal property was given to the executor. The will further provides for the payment to each of testator's two sons of $10,000 in cash as and when they each arrive at age twenty-one. Final distribution of the estate is deferred until the younger son attains age thirty, which will be in the year 1930. The inventory filed by the executor of Albert S. Larrabee showed personal assets of $78,249.78. The real estate was appraised at $137,850, making a total of real and personal estate of $216,099.78. Edward F. Larrabee, the executor, continued the businesses of the testator, as directed by the will, until the executor's death in July, 1920. From the testimony, which was taken on this appeal, it appears, however, that the executor's part in the conduct of the various business enterprises was merely supervisory; that the actual detail of all of the business was attended to by employes, *Page 657 
most of whom were in the employ of the testator at the time of his death. The executor had a large business of his own at Lakehurst, New Jersey, which is ten miles from the site of the business enterprises of the testator, and the executor's supervision of the estate's business was accomplished through occasional visits to Lakewood, on which occasions he consulted with the employes and signed checks in blank in sufficient numbers to accommodate the needs of the business, so that the employes could make disbursements as required. These visits would usually occupy from one to two hours' time, about half of which time, according to the testimony, was devoted to the coal business personally owned and operated by the executor. No intermediate account was ever made up by the executor, and, after his death in 1920, a final account was made up by the executrix of the executor and filed in the surrogate's office. This account is sworn to under date of March 15th, 1923. It was finally allowed on August 20th, 1924. This account is quite voluminous and purports to show in detail all the receipts and disbursements of this executor during the period of his administration of the trust. During the course of his administration real estate of the testator was sold for approximately $5,000, and the money received from this sale is presumably included in the list of receipts exhibited in the account, although I have been unable to locate any specific item representing this sale. It appears, from the summary of the final account, that the total cash receipts of this estate during the administration of Edward F. Larrabee, the executor, amounted to $854,138.08. This represents the gross income of the hotel, store and farm and also the coal business which was continued by the executor for about nine months after testator's death, when he personally purchased that business from the estate. This amount, added to the inventory of $78,249.78, makes a total of personal property passing through the hands of the executor of $932,387.86. The summary of this account also shows disbursements in the same amount as the receipts. Counsel for the respondents claims in his brief that compensation should be allowed the executor for the handling of $1,867,775.72, *Page 658 
and he arrives at this amount by adding together the total amount of receipts and the total amount of disbursements, as shown by said summary, in both of which is included the item of inventory above mentioned. Obviously, this is a doubling up of the amount of money and personal assets coming into the hands of the executor, and if this amount were adopted by the court it is apparent that the estate would be considered upon a false basis. In this amount credit is taken for both the receipt and disbursement of the same amount; and, clearly, if I receive money in one hand and pay it out with the other, it does not thereby multiply twofold. However, in considering the amount of commissions to which the executor was entitled, the computation is to be made, not upon the total cash or personalty passing through the hands of the executor, but only upon the amount of the corpus of the personal estate, augmented by the amount realized from the sale of real estate and the profits, if any, from the business. Weeks v. Selby, 61 N.J. Eq. 668; Gilligan
v. Daly, 79 N.J. Eq. 36.
While it is true that the will directs the executor to continue the testator's businesses, and this direction was carried out by the executor for a period of some years, and until his death, this does not entitle him to compensation in addition to the statutory commissions (Gilligan v. Daly, supra), although, if there had been no such direction in the will and the business had been conducted by the executor, additional compensation might have been allowed. This apparent anomaly in the law is explained by Vice-Chancellor Emery in Gilligan v. Daly (at pp. 41,42).
An examination of the summary of receipts and disbursements of this estate, however, indicates that there was practically no increase in the inventory, as stated in the beginning of this trust, and at the death of the executor. The receipts from the general store and the disbursements are exactly the same. The hotel disbursements are $2,267.62 more than the receipts. The hotel bar receipts are $1,387.69 more than the disbursements. The farm receipts are $2,109.10 more than the disbursements. The coal business receipts *Page 659 
and disbursements are the same. The cash for miscellaneous receipts practically corresponds to the amount turned over to the successor of the executor. It would appear, therefore, that the net profit, if any, arising from the conduct of the testator's business during the seven and one-half years of the executor's administration, was very slight; at most, it could not have exceeded the sum of the three items above mentioned, which is $5,764.41.
In addition to the allowances made to counsel and to the executrix of the executor, and which are here under review, an allowance of $1,000 was made to H.H. Wainwright, Esq., as proctor for Joseph H. Johnson, who succeeded Edward F. Larrabee, as executor of this estate; $1,500 to W.H. Jayne, Jr., Esq., as proctor for Mr. Johnson, and $500 to Mr. Jayne for services rendered Edward F. Larrabee, as executor. Joseph H. Johnson was also allowed commissions amounting to $1,668, for the administration of the estate from July 1st, 1920, to December 27th, 1922. These allowances, however, are not here under review, but are mentioned merely for the purpose of indicating in this record to what extent this estate has been mulcted in fees and commissions.
It is not possible to accurately determine, from the final account, the actual amount of personal property, including the cash received from the sale of real estate, which came into the hands of this executor, and which represented the corpus of the estate. Proctor for appellants in his brief suggested that the maximum amount which could be considered is approximately $85,000, and with this estimate I am inclined to agree, and, for the purpose of this decision, the personal estate coming into the hands of this executor will be considered as amounting to that sum. This determination of the total amount of personal assets, upon which commissions are to be computed, is important, because, under the terms of the will, the trusts therein created were to continue for a period of approximately seventeen years, or until the youngest son should arrive at age thirty. Of this period Edward F. Larrabee's administration, as executor and trustee, covered between seven and eight years. Joseph H. Johnson's administration *Page 660 
covered a period of a year and a half, and Bruce M. Larrabee's administration will continue until 1930, thus covering a period of between seven and eight years from the date of his appointment.
During the administration of Joseph H. Johnson, as executor and trustee under this will, the business enterprises of the estate were carried on as they had been theretofore, and these enterprises are now being conducted by the present trustee. The amount of commissions allowable to executors and trustees upon the settlement of decedent's estate is fixed by statute. 3 Comp.Stat. p. 3860 §§ 128, 129. The maximum amount of commissions allowable to an executor on estates of over $50,000 is limited to five per cent. of the amount of such estate. The maximum amount of executor's commissions which could therefore be allowed on this estate would be $4,050, but the will also refers to the executor as a trustee, and no doubt he was such, as he was to hold the estate in trust for a period of seventeen or eighteen years before final distribution, and under such circumstances, he would be entitled to a commission both as executor and trustee; and, under appropriate circumstances, this compensation, in each capacity, might extend to five per cent. of the total value of the personal estate. Koch. N.J. Prob. L. 685; Baker v.Johnston, 39 N.J. Eq. 493; Pitney v. Everson, 42 N.J. Eq. 361;In re Hibbler's Estate, 78 N.J. Eq. 217; Lyon v. Bird, 79 N.J. Eq. 157.
In the instant case, however, it is quite apparent that the maximum amount of commissions ought not to be allowed to the executor in both of his capacities under the will. While no intermediate accounting has been had in this estate, and the executor, as such, did not turn over to himself, as trustee, the assets of the estate, it may be assumed, for the purposes of this decision, that the executor's duties as executor ceased at the end of the first year after the decedent's death, and that thereafter he continued his duties as trustee. In re Hibbler'sEstate, supra. Considering this matter in the light most favorable to the executor, therefore, the maximum amount of commissions which could, under any circumstances, be allowed to the original executor and his successors, during *Page 661 
the continuance of the trust, would be ten per cent. of the total estate; but as the duties of Edward F. Larrabee, as executor, were inconsiderable as compared with the duties of the trustee under the will, the same allowances should not be made to the executor as is made to the trustee and his successors. While "each case must depend upon its own circumstances and be tested and controlled by the criterion intended by the statute — compensation" (Metcalf v. Colles, 43 N.J. Eq. 148, 153), yet the rule of law respecting allowance of compensation, as applied in similar cases, is helpful. The instant estate is similar, except for the fact of continuance of business (which is here immaterial) to that involved in Lyon v. Bird, supra. In that case the corpus of the estate amounted to slightly over $80,000, and the executors' account was settled within one year and the estate then transferred to themselves as trustees. There Vice Ordinary Walker (now chancellor) allowed the executors one per cent. on the amount of the inventory and two and one-half per cent. "on the principal which augmented the amount of the inventory," by which language he evidently referred to income. It is not possible here, however, to separate principal from income, so that a compromise between the two rates of commission allowed in that case would, perhaps, be appropriate in this; and I feel that, under the circumstances of this case, I am justified in allowing to Edward F. Larrabee, as executor, commissions at the rate of two per cent. on the corpus of the personal estate, which commission would amount to approximately $1,700. In addition to this he is, of course, entitled to an allowance for his services as trustee, but "no more than five per cent. in all may be allowed to a trustee or trustees, either one or several in succession, for the care and management of the corpus of an estate." In re Hibbler's Estate, supra. Under the rule of theHibbler Case, Edward F. Larrabee and his successors in the trust would be entitled to commissions to the maximum amount of five per cent. of $85,000, or $4,050, for their services during their term of the trust, which, under the terms of the will, would continue for approximately sixteen years after the termination of the executor's administration. Edward F. Larrabee, having administered the trust for but *Page 662 
approximately seven years after the termination of his duties as executor, would be entitled to approximately $1,700 or $1,800 of this amount. That Mr. Johnson has already received $1,668 as commissions for one and one-half years' service as trustee does not alter the fact that Edward F. Larrabee's commission should be limited as above indicated. The allowance to Johnson is not here under review. The trust estate must be left in such shape that the court will hereafter, upon the termination of the trust, be in a position to allow commissions to the trustee who is now administering that trust (In re Hibbler's Estate) and thus permit a proportionate division of the lawful commissions amongst the several trustees, according to the period of time covered by their respective incumbencies.
I feel that I am obliged under the circumstances to reduce the allowance of the executor from $12,000, as fixed by the Ocean county orphans court, to $3,500. If it be said that such a reduction results in a meagre allowance to the trustee for his services, the answer is that the legislature and not this court has so limited it. It will be presumed that an executor or trustee, when accepting a trust under a will, does so with a full understanding of the statutory limitations upon his compensation. If he is not satisfied to accept the trust under the statutory limitations as to compensation, he may renounce.
As to the allowance to Mr. Garrison, proctor for Hanora Larrabee, executrix of the executor, this is clearly excessive. By his own testimony it appears that he never represented the executor in his lifetime, except for the giving of casual advice at times when the executor was represented by other counsel who has already been paid for his services, and that practically his whole service was to the executrix of the executor and that it very largely consisted in helping make up the executrix's account. It appears quite conclusively that the executor's accounts, at the time of his death, were in absolute confusion. No intelligible records of the various business enterprises were kept, except possibly records of receipts and disbursements, and these were plainly incomplete. If such records had existed, the executor's account could have been *Page 663 
made up within a few weeks, at the most; whereas, it was almost three years after the executor's death that his account was finally stated. In order to state that account it was necessary to employ two separate accountants, one stenographer for a number of weeks, and the attorney respondent devoted a very considerable amount of time to examining the papers of the deceased executor in an effort to find out just what was the exact status between the executor and the estate which he was administering. This work on the part of the accountants, the attorney and the stenographer, was supplemented by the services of the executrix of the executor and the members of her family and covered a period of many months, the greater part of the work being made necessary, in my judgment, by the chaotic condition of the executor's records and accounts. It was a practical impossibility for anyone to determine, after the executor's death, whether the business enterprises of the testator had been conducted at a profit or at a loss. This is shown upon the face of the account itself. I am convinced that the account, although finally admitted to be correct by the appellants here, was at best a mere guess, and that such admission was made only because of the impossibility of anyone being able to determine the exact status of the estate's affairs, and, consequently, being unable to show the correctness or incorrectness of the account. It is the business of the executor, and in this case the executrix of the executor, to make up his own account, and if through neglect the executor fails to keep accurate records of his transactions and is obliged to employ a lawyer to extract him from his difficulties, the lawyer should be paid by the executor and not by the estate. The executor in such case has no cause for complaint if he is obliged to pay out a considerable portion of his commissions, or all of them, in lawyers' fees. Kingsland v.Scudder, 36 N.J. Eq. 284, 286; Fluck v. Lake, 54 N.J. Eq. 638;In re Wiley's Estate, 65 Atl. Rep. 212; In re Drier's Estate,92 Atl. Rep. 51.
In Fluck v. Lane, supra, the court said (at p. 644):
"The services of the administrator's counsel at the accounting were made necessary by the same shortcomings and *Page 664 
misconduct which deprive the administrator of commissions, and I do not think the estate should be mulcted to pay counsel fees. The allowance of them should have been denied."
In Kingsland v. Scudder, supra, the court said (at p.286):
"A fiduciary charged with the management of property, whether as executor or otherwise, has a right to employ counsel when necessary or proper to protect the estate, or to enable him properly to manage it, and the reasonable charges for such service will be paid out of the estate. Wolfe's Case, 7 Stew.Eq. 223. But he will not be allowed for such work, though done by counsel, as he, in contemplation of law, is bound to do himself. In other words, if he chooses to employ others to do his work he must pay them himself."
I am unable to determine, from Mr. Garrison's own testimony, that any extended services were rendered by him to the estate, practically all of his time devoted to this matter being given to assisting in the making up of the account and in the examination of papers of the deceased executor in an effort to find some basis for an account. However, he is entitled to some compensation for services to the estate, but I am firmly convinced that the allowance to him by the orphans court was exorbitant, in view of the fact that the bulk of his services was for the benefit of the executrix and not of the estate. The effect of the allowances which are here under review is to make legatees of the proctor and the executrix of the executor; in other words, they become distributees of the estate, and this has been frowned upon by our courts in a long line of decisions. They are entitled to reasonable compensation for their services, and no more. In my judgment, a liberal allowance to counsel for his services in this estate is $2,000, and I will advise a reduction of the allowance made by the Ocean county orphans court to him to that amount. I do not by this mean to intimate that the whole services performed by Mr. Garrison are of no greater value than this reduced allowance; in fact, I believe that he is entitled to additional compensation, but this he should collect from the executrix and not from the estate. I will advise a decree in accordance with the foregoing conclusions. *Page 665