In the matter of the estate of ALEXANDER H. CHAMBERLAIN, deceased.

[Decided June 20th, 1931.]

*Mr. Henry T. Stetson,* for the executors.

BERRY, VICE-ORDINARY.

After an examination of the executor's account I have decided to make the following allowances:

To the executors, the sum of $5,000 for commissions on *corpus* and the sum of $500 for commissions on income.

To Henry T. Stetson, Esq., as proctor for the executors, the sum of $3,500, "in addition to the $1,500 already paid as shown in the account."

The commissions to the executors amount to slightly less than two per cent. on the inventory value of the estate and about two and one-half per cent. on the present value. The commissions on the income amount to approximately five per cent. on the total income. I do not feel that larger allowances to the executors could be justified. There is nothing in the file to indicate any unusual service by them and it appears from a copy of the will left with me by the proctor for the executors that the executors, upon the passing of

this account, become trustees and continue as such during the life of the daughter of the decedent. They will be entitled, eventually, to commissions not exceeding five per cent. on the *corpus* of the trust estate and to commissions at a rate not exceeding five per cent. on the income received by them as trustees. While, as I have said, there is nothing to indicate any unusual service by the executors in this estate, it does appear that since the testator's death in August, 1929, the value of the estate has shrunk from over $258,000 to slightly less than $200,000. This shrinkage is due, apparently, to stock market conditions, the testator's estate being largely composed, at the time of his death, of stocks listed on the New York Stock Exchange, and subject to market fluctuations. They are not legal investments for trust funds and while the will authorized the executors to continue the investments and relieved them from surcharge for losses arising from such retention, it would seem to me that common business experience should have suggested to the executors, at least to the executor trust company, which is supposed to be a specialist in this line of work, and holds itself out as such, that immediate sale of these stocks at the then market prices would have been most advisable, and that their retention might very possibly result in a loss to the estate. It was common knowledge, not only amongst bankers and trust companies, but the general public as well, that the stock market condition at the time of testator's death was an unhealthy one, that values were very much inflated and that a crash was almost sure to occur. In view of this fact, I think it was the duty of the executors to dispose of these stocks immediately upon their qualification as executors and that the loss to the estate resulting from their failure to act should be taken into consideration now in awarding them compensation for their services. It is only the fact that the will authorizes the executors to retain these stocks that prevents a surcharge now.

In approving the executors' account containing an item showing payment of $1,500 on account of counsel fees, I

do not wish to be understood as approving the practice of executors making payments on account of counsel fees without an order of the court authorizing them to do so. There is no such order in the files in this cause. Such payments, made without authority of the court, are always at the personal risk of the executors and circumstances might arise under which they would be surcharged for the amount of such payments.