Alex. F. Reid, Jr., appellant pro se in this cause, was engaged by J. Arthur Applegate and George Manvel Applegate, executors of the above estate, as proctor some time in the month of December, 1932. The account of the executors was noticed for settlement and allowed by the orphans court of Middlesex county on November 30th, 1934. The orphans court then, on Reid's application, allowed him a counsel fee of $2,800 and the additional sum of $128.59 for costs or disbursements. Neither of the executors, nor any of the beneficiaries under the will of the decedent, were present in the orphans court when the account was allowed and the application for counsel fee was made. The executors upon hearing of the amount allowed to the proctor, through other counsel, applied to the orphans court for a rule to show cause why the sum allowed should not be set aside and modified. The rule was argued on the 28th day of December, 1934; at the conclusion of the argument the court vacated its decree and signed a new order *Page 262 
allowing counsel fees of $500 and disbursements in the sum of $128.59. From this latest order, the appellant appeals to this court.
On the hearing before this court, the appellant related his engagement by the executors and his services rendered to the estate. He asserted that at the time of his engagement, the executors, then and there, requested him to set a definite fee for the services he was to render, but that he refused to fix a specific sum. He told them, he alleges, that it was impossible for him to mention in advance what his expenses would be. He said that J. Arthur Applegate, one of the executors, in the course of the conversation, said that as a business man he wanted to know "where he stood" and asked the appellant if he would handle his father's estate for the sum of $250. The appellant stated that he would not; whereupon, J. Arthur Applegate asked him if he would "wind up" the estate for the sum of $500. The appellant said he would not do all the incidental work for that sum; that he told both the executors that he could not tell in advance what a proper fee would be; that his fee would be determined by the orphans court. Both of the executors, J. Arthur Applegate and G. Manvel Applegate, testified, in effect, that at the time they engaged the appellant as proctor of the estate, they asked him what the costs of his services as proctor would be; that he then told them that the court would decide that; to which J. Arthur Applegate replied: "No, we want a definite figure." Reid then asked J. Arthur Applegate what he considered a "fair figure" under the circumstances; whereupon, J. Arthur Applegate said $250. Reid said, "no," and the outcome was, Reid said he would do all the work for $500 maximum." J. Arthur Applegate further testified that Reid said during the discussion that if the orphans court made any greater allowance than the sum last named, he would not accept the excess, and, further said: "If you are not satisfied, you can write your own ticket."
G. Manvel Applegate testified that Reid said his charge would be "$250 or maybe $500;" that Reid was then asked, "will you take $250?" and he said, "no, the judge looks over *Page 263 
the amount, but it will be no more than $500. If it is, you can write your own ticket." Then Reid and the executors agreed to the sum of $500 and all "shook hands on it."
The will was probated by the executors, without the aid, or the appearance, of the proctor. The total value of the estate is approximately $50,000. The decedent was engaged in the coal business. The testimony discloses that there was no litigation involved in the estate, excepting two ordinary dispossess suits.
The appellant produced as a witness, his secretary. She testified that at the time the executors and the appellant were discussing the question of fees, she was in an outer office and "heard it discussed between those engaged in it;" that she "heard the appellant say that he would not fix any amount for the services to be rendered by him and that he would leave that matter for the court to determine."
The issue here is clearly one of fact. The appellant is a member of the bar. The respondents appear to be successful business men. It may be properly assumed that Judge Adrian Lyons of the Middlesex orphans court, who made the allowance, felt that there was justification for the protest made by the executors against the size of the allowance to the appellant, and in consequence of which, he modified his original order, reducing the amount from $2,928.59 to $628.59. But aside from his final determination, I am satisfied that the respondents consulted Reid with a fixed purpose of ascertaining the cost of his services as proctor and that they decided upon a limited amount for his compensation. I believe that at the conference a sum was agreed upon; in my opinion, the evidence points to this fact. I think that the figure of $500 was agreed upon by all parties. I feel that the sum of $628.59 allowed by the orphans court for services and expenditures is a fair and reasonable amount. Kingsland v.Scudder, 36 N.J. Eq. 284. In the administration of the estate no unusual situation developed requiring more than ordinary labor, or expenditure of energy, or of legal skill. The estate consisted largely of personal property and no great difficulty was experienced in liquidating it. No unusual *Page 264 
problems of difficulty arose in the course of its liquidation.Wyckoff v. O'Neil, 71 N.J. Eq. 729; 71 Atl. Rep. 388; In reChamberlain's Estate, 9 N.J. Mis. R. 809; 156 Atl. Rep. 42.
The proctor was not entitled to payment for services which the executors themselves performed and were bound to perform. He is entitled to be paid or rewarded for his submission of advice, his exhibition of skill, and his performance of labor to the estate.Kingsland v. Scudder, supra; In re Larrabee, 98 N.J. Eq. 655;130 Atl. Rep. 195; In re Estate of Mansell, 41 N.J.L.J. 275. In the last mentioned case, the principle was enunciated that the executors are entitled to the advice and services of counsel and attorneys, in matters where it is necessary to invoke their professional skill, and to make reasonable payments as compensation therefor, but they will not be allowed such payment for work that does not require that skill, and which they might themselves do.
Under the circumstances, I shall advise an order fixing the appellant's compensation for services in the sum of $500; and, for his expenses, the further sum of $128.59. *Page 265