Kuser *v.* Wright.

---

ANTHONY R. KUSER et al., appellants,

*v.*

JOHN WRIGHT, receiver of the Ott & Brewer Company, respondent.

1. The Ott & Brewer Company was incorporated under the laws of this state, with three directors. Our statute provides that, to transact business, there must be at least three directors elected, and that when a director ceases to be a stockholder he shall also cease to be a director. Bell, one of the directors, made an assignment for the benefit of creditors, after which the other two directors executed chattel mortgages to three of the appellants, who loaned money to the corporation at the same time, and took the mortgages without notice that Bell had ceased to be a stockholder.—*Held* that, as to third parties, dealing in good faith with the company, without notice of any infirmity in the title of Bell as a director, he must be regarded as a director *de facto*,

and thus the company had, when the security was given, three directors as. required by law.

2. The fact that no notice was given to Bell of the meeting of directors, at which the mortgage was authorized to be executed, does not affect its validity. That is a subject into which the mortgagee was not bound to examine.

3. The receiver of an insolvent corporation cannot successfully assail a mortgage given by the corporation because it was executed for an antecedent debt..

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Wright* v. *First National Bank, 7 Dick. Ch. Rep. 392.*

*Mr. Garret D. W. Vroom, Mr. Edwin Robert Walker* and *Mr. Chauncy H. Beasley,* for the appellants.

*Mr. James Buchanan,* for the respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

The Ott & Brewer Company was organized under the laws of this state, with three directors, viz., Brewer, Tucker and Bell.

In June, 1891, Bell made an assignment for the benefit of creditors, and soon after that left the state.

In November, 1891, the Ott & Brewer Company, by the two directors, Brewer and Tucker, executed a mortgage on its real estate and certain goods and chattels, to the First National Bank of Trenton, to secure a pre-existing indebtedness. This mortgage was recorded as a real estate mortgage, but was not sworn to or recorded as a chattel mortgage.

In August, 1892, the said company, by the same two directors, executed three several chattel mortgages to Anthony R. Kuser, John L. Kuser and Albert Brewer respectively, to secure to each of them the sum of $5,000, at that time loaned by them to the said company.

In May, 1893, a bill was filed in the court of chancery, alleging that the said " The Ott & Brewer Company " was insolvent,. and thereupon John Wright was appointed receiver of the said company.

The receiver exhibited his bill to set aside all these mortgages.

The alleged infirmity, chiefly relied upon, is that two directors had no power to establish a lien upon the property of the corporation.

Our act concerning corporations, section 16, provides:

"That the business of every such corporation shall be managed and conducted by the directors thereof, who shall respectively be shareholders therein."

### Section 17 provides:

"The directors shall not be less than three in number, and they shall be chosen annually by the stockholders at such time and place as shall be provided by the by-laws of the company, and shall hold their office for one year, and until others are chosen and qualified in their stead."

### Section 20 provides that

"when any vacancy occurs among the directors, or secretary or treasurer, by death, resignation, removal or otherwise, it shall be filled for the remainder of the year in such manner as may be provided for by the by-laws of the said company."

### Section 47 provides that

"it shall not be lawful for any person to be elected a director of any body corporate in this state issuing stock unless that person shall be, at the time of his election, a *bona fide* holder of some of the stock thereof."

### Section 48 provides that

"when any person, a director of any body corporate, shall cease to be a *bona fide* holder of some of the stock thereof, he shall cease thereupon to be a director thereof."

The point made against these mortgagees is that under our statute there must be at least three directors to manage the corporate business; that by the assignment made by Bell for the benefit of his creditors he ceased to be a stockholder, and by force of the statute ceased at the same time to be a director of the company, thereby leaving the corporation without a board of directors legally qualified to conduct its affairs.

That such a result justly or legally flows from these premises cannot be conceded. It is apparent that dealing with these corporate bodies would be in the highest degree hazardous and unsafe if the public, without notice in fact, is chargeable in law with knowledge of a latent infirmity in the title of every director of the company. A doctrine so destructive to the security of commercial transactions, now so largely conducted by corporate action, has no support in the law. The receiver stands for the corporation, and cannot impeach any act which the corporation itself could not successfully assail.

Bell's original title to the office of director was good; it is not denied that he was legally elected. The corporation held him out to the public as one of its duly-authorized agents by failing to declare his office vacant and electing his successor.

In *Doremus* v. *The Dutch Reformed Church*, *2 Gr. Ch. 349*, Chancellor Vroom said " that where the original title of an officer is sufficient, though good cause of amotion be shown, even in a case where the charter declares that for such cause of amotion the officer shall vacate his office, the office is not determined until there be an amotion."

He also said " that where persons are officers *de facto* they are *in colore officii*, and their acts will be valid until they are lawfully ousted, and more especially as they respect third persons they are binding on the corporation."

The authorities are cited in the opinion.

This rule has never been departed from in this state.

Vice-Chancellor Van Fleet, in *Mechanics' Bank* v. *Burnet Company*, *5 Stew. Eq. 236*, adopted it. He there declares " that if the officers selected are ineligible or are elected irregularly or illegally, but are allowed by the proprietors of the corporation to take control of its property, and to exercise its functions and powers, they become officers *de facto*, and as such may act for and bind the corporation. An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law.

" From a very early time it has been held that the acts of *de facto* officers are binding upon the corporation until they are

lawfully ousted, especially so far as their acts create rights in. favor of third persons."

That such is the current of authority will appear by reference to the books. *Mining Company* v. *Bank, 104 U. S. 192; Beach Corp. §§ 233, 234; Ang. & A. Corp. § 287.*

In *San Jose Savings Bank* v. *Sierra Lumber Company, 63' Cal. 179,* a director who had ceased to be a stockholder, no- judgment of ouster having been pronounced against them, was. held to be a director *de facto,* and his acts valid as to third persons.

Mr. Taylor, in his book on *Private Corporations, §§ 187, 188',* after stating the rule as formulated in the cases above cited, says that

"It is submitted that this statement of the rule does not give sufficient prominence to the principle of estoppel, on which the rule depends; a principle which, in its application to the responsibility of corporations for the acts of *de facto* officers, may be stated thus: If a body of men, acting as a corporation, permits certain persons to act openly as corporate officers, or if it is permitted by the directors, assuming them to have had the power to appoint the officer in question, the corporation will not, to the detriment of persons who, in good faith, have acted on the assurance that the persons acting as officers were the officers they assumed to be, be permitted to impeach the validity of their acts and contracts on the ground that such persons were not legally corporate officers."

*Bottomley's Case, L. R. 16 Ch. Div. 681,* is not in conflict. In that case the contest was between the company and its own stock-holders. Five directors were necessary to conduct the business. After one became disqualified by insolvency, the other four took proceedings by which they attempted to enforce a forfeiture against some of their stockholders. ·

Sir George Jessel, master of the rolls, held that the share-holders were entitled to have the business of the company con-ducted according to the articles of the association in relation to that proceeding. As between stockholders and the company, that was the correct rule.

In *In re County Life Assurance Company, L. R. 5 Ch. App. Cas. 288,* a policy signed by three *de facto* directors of the com-pany was enforced in favor of the party insured.

Lord-Justice Giffard observed, in delivering his judgment, that he did not hesitate to say that the business of companies could not be carried on if this was not held to be the law.

As to the public, Bell was clearly a director *de facto*, and the corporation was represented in the affair before us by three directors, as required by the statute.

This court has adjudged that, as in favor of creditors and third persons dealing with a corporation in good faith, the regularity and validity of its organization, effected under color of its charter, cannot be impeached, and the acts of its officers, who are officers *de facto* under color of an election, are binding on the corporation. *Hackensack Water Co.* v. *De Kay, 9 Stew. Eq. 548.*

A majority of the directors of a corporation, in the absence of any statutory regulation, is a quorum, and such majority, when convened, can do any act within the power of directors. *Wells* v. *Rahway Rubber Co., 4 C. E. Gr. 402.*

Under these cases, the fact that no notice of the meeting of directors, at which the mortgages were authorized, was given to Bell cannot affect the validity of these securities. That is a subject into which those who are dealing with a corporation are not bound to inquire. That duty falls on the company alone when it holds out its officers as its accredited agents. Nothing like an approach to safety could exist in transactions with corporate bodies if such an obligation was laid upon third parties contracting with them. After the most careful inquiry, the question would still be open to controversy.

The assignment by Bell for the benefit of creditors was not constructive notice to the appellants that he had ceased to become a shareholder. Actual notice must be shown, and that was not proven.

Those only are chargeable with constructive notice of the assignment who seek to establish a title to his individual property.

The company is estopped from denying the authority of one who is, *de facto*, a director, and in that capacity authorized to represent it.

The fact that the mortgage to the bank was executed to secure an antecedent debt does not impair its standing as between the corporation and its creditor. It was taken in good faith, and it was as much the duty of the company to pay the debt as though it had been contracted at the date of the mortgage. *Knowles Loom Works* v. *Vacher et al., Supreme Court, February Term, 1895.*

So far as the mortgage to the bank is a lien upon personal property, it must be postponed to the chattel mortgages, because the bank failed to record it as a chattel mortgage. The decree below should be reversed, with costs in this court and in the court below, and the securities of the appellants established in accordance with the views herein expressed.

*For reversal*—The Chief-Justice, Garrison, Lippincott, Magie, Reed, Van Syckel, Bogert, Brown, Krueger, Sims, Smith—11.

*For affirmance*—Dixon—1.