Mrs. Caruso has filed a petition in which she sets out that she is now a resident of New York City, New York; that her husband, Enrico Caruso, late of the Kingdom of Italy, died leaving a child, Gloria, an orphan minor under the age of fourteen years, to wit, now of the age of seven years, having assets in New Jersey, and without having disposed of the guardianship of said orphan minor; that federal taxes have been paid on behalf of the minor which, it is believed, are in excess of taxes lawfully assessible upon her estate, and that she has a claim against the United States for refund thereon; that such taxes were paid in part out of moneys received by the petitioner as administratrix of Enrico Caruso, deceased, and were charged in part to the said minor's interest in the funds in the hands of said administratrix, and which are located in New Jersey, and in part such refund is due to the fact that the Victor Talking Machine Company of Camden paid a sum to the United States in behalf of said minor; that no general guardian has been appointed for said minor by any court in any jurisdiction, and that petitioner has been advised that it is necessary to have a general guardian *Page 217 
appointed for asserting the said claim against the United States. Petitioner then sets forth the names and residences of the nearest of kin of said minor, and prays that letters of guardianship of the person and property of Gloria be granted to her, petitioner, until the said orphan, after arriving at the age of fourteen, shall choose another guardian or guardians, and for such other relief as may be just and for the best interest of said orphan minor.
It is apparent from the above recitals of the petition herein that the object of the application for this guardianship is, in part, at least, to contest the claims against the United States government for rebate of income taxes alleged to be due to the minor; but it also clearly appears from such recitals that both the minor and Mrs. Caruso, her mother, who seeks the guardianship at the hands of this court, at least reside in the State of New York.
The petitioner relies on section 43 of the Orphans Court act.Comp. Stat. p. 3827, amended by P.L. 1924 p. 67. Both sections are the same, so far as the first sentence is concerned, and the only amendment is the addition of a second sentence. This act is now as follows:
"The ordinary shall have full authority to appoint a special guardian for the property, real or personal, within this state of any non-resident minor, and the orphans court or surrogate of any county shall have concurrent authority to appoint a special guardian for any property, real or personal, within said county of any minor residing without the state; and said courts shall have authority to control, remove or substitute such guardian, and in any case not already provided for by statute or the rules of the court, the court shall take such action in the matter as it shall deem most for the advantage of the infant. The ordinary or the orphans court or the surrogate of the county where any minor may reside, shall also have full power to limit and restrict the letters of guardianship to a particular fund or a particular portion of the property or estate of the minor, and the authority and duty of the guardian in such cases shall be limited to the receiving and administering only such fund or particular portion of the property and estate of the minor as is mentioned in the letters of guardianship. In all other respects such limited and restricted guardianships shall be subject to the provisions of this act and the laws of this state applicable to general guardianships; provided, that a limited guardian shall not be appointed under the provisions of this section, if there is a general guardian for such minor legally qualified and acting on his behalf within this state." *Page 218 
The jurisdiction of the ordinary before the revolution, and since, extended to the granting of letters of guardianship.Griff. L.R. (N.J.) 1185 note 1; In re Walker, 95 N.J. Eq. 619,623.
There is no doubt about the power of the ordinary to appoint a guardian in a proper case, the question is one of power; and sometimes, when the power exists, such an appointment becomes a question of propriety.
In 3 Pom. Eq. Jur. (4th ed.) § 1306, it is laid down that power to appoint a guardian can of necessity only be exercised in respect of persons or property within the territorial jurisdiction of the court — that is, within the state or county, and jurisdiction does not depend upon the legal domicile of the infant, it is sufficient to authorize the appointment of a guardian if the infant is an actual resident within the territorial jurisdiction of the court. And where the infant is both domiciled and actually resident out of the state, but has property within the state, the courts of that state have power to appoint a guardian over the property and for the maintenance of the infant. If, however, the infant is neither domiciled nor actually resident in the state, and has no property within its territory, the courts of that state have no power to appoint a guardian.
In 28 C.J. 1065 § 22B, it is stated that a general guardian cannot be appointed for an infant, in certain circumstances, which circumstances are not involved here, but it shows clearly that the matter is one of propriety. And (at p. 1066 § 23) it is stated that where a guardian for an infant has been appointed, and he has not resigned or his guardianship been properly revoked, there can be no valid appointment of another person as guardian, and that this rule applies as well to testamentary as to other guardians.
In this case the infant is neither domiciled nor resident here, nor even found within this state. She has, however, property here, which a guardian ad litem is amply protecting through the advice and assistance of able counsel, in the cause hereinafter mentioned.
In re Williams, 77 N.J. Eq. 478, was a controversy in 1910 before Vice-Chancellor Howell, in the court of chancery, *Page 219 
as to the custody of an infant, and he held (at pp. 481 etseq.) that the chancery court takes cognizance of cases involving the custody of children legally domiciled within this state, both by virtue of its general jurisdiction and under the statute; that by virtue of its general jurisdiction it has the same authority and control over the care and custody of infants, who are actually resident of this state, as it has over those who are domiciled here. The vice-chancellor holds (at p. 482) that the court of chancery never assumed authority to appoint a guardian for infants, but that duty is imposed upon theprerogative and orphans courts, while the power seems always to have been exercised by the English chancery as part of its general supervision of the affairs of infants.
The vice-chancellor in this case (In re Williams) reviews extensively the power to appoint guardians, and shows that it may either be for one domiciled in the state or resident there, or for infants having property there. And he observes (at p. 485) that the principal seems to be one of universal application, and, applying it to the case in his hands, came to the conclusion that the court of chancery had jurisdiction to entertain application touching the custody of foreign children who are within the territory of this state. And such is this case. The power to appoint a guardian by the prerogative or orphans courts is exactly analogous to the power of the court of chancery to regulate their custody. And in both cases it depends upon domicile or residence here, or at least upon the minor being found within this state. The case of In re Williams was not appealed, and has never since been questioned. It is the law. Why pursue this inquiry further in this court on the question of the right to appoint a guardian for a non-resident infant? It does ont exist unless the infant has an interest in property in New Jersey, and then it must be a special, not a general, guardianship, as will hereafter appear.
It is to be observed that the petition alleges that no generalguardian has been appointed by any court in any jurisdiction for the minor and that it is necessary to have a general guardian here, and the prayer is for letters of guardianship of the person and property of Gloria to be granted *Page 220 
until she arrives at the age when she may choose her own guardian; and the petition is for other relief.
Now, as above shown, the only authority for appointing a guardian for a non-resident infant, of property of such infant here, is under section 43 of the Orphans Court act, and that provides that the ordinary shall have full authority to appoint aspecial guardian for the property, real or personal, within this state, of any non-resident minor. Furthermore, in the second sentence of the act, it is provided that the ordinary or orphans court or surrogate of the county, where any minor may reside, shall have full power to limit and restrict the guardianship to a particular fund or a particular portion of the property or estate of the minor. While this second sentence of the act does not in terms apply to the case at bar because the minor is nowhere resident in this state, yet, the ordinary, by virtue of his general power, can, I think, by analogy to the statute, limit a special appointment in such a case as this to a contest for refund of property, which should be brought within this state, of a non-resident minor.
Now, a guardian ad litem in a chancery suit (which will hereafter be more fully stated) has been appointed, and is acting, in this state with reference to all of the minor's property, which is personal, and which is situate in this jurisdiction.
The late Enrico Caruso died in Italy on August 2d 1921, being a resident and citizen of that kingdom, as petitioner alleges, and which is undoubtedly so. He left a large estate, the greater part being located in the Kingdom of Italy, some in the State of New York, and also certain rights arising under a written contract made by him in his lifetime with the Victor Talking Machine Company, a corporation of the State of New Jersey, having its principal location and place of business in the city of Camden, in this state, which consist of payment to Mr. Caruso for an indefinite time of the royalty upon the sales by the company of talking machine records of the voice of Mr. Caruso, who was a famous tenor, the amount to be ascertained in and paid at the end of each calendar year. It is in these royalties that this little daughter, as heir-at-law, is interested. In order to facilitate the *Page 221 
collection of them, the complainant, Mrs. Caruso, together with a creditor, petitioned the ordinary of this state for her appointment as ancillary administratrix of Enrico Caruso in New Jersey. Such proceedings were thereupon had that on January 17th,, 1922, the ordinary decreed that letters of ancillary administration of the goods and chattels, rights and credits of the said Enrico Caruso within the State of New Jersey, be granted to the complainant upon her qualifying, which she did. Pursuant to such decree letters of ancillary administration were duly issued to Mrs. Caruso out of the prerogative court.
On November 16th, 1923, Mrs. Caruso filed her bill of complaint in chancery of New Jersey against Gloria Caruso and others (Caruso v. Caruso et al., 54 Doc. 620), in which she prayedinter alia that the accounts of complainant as administrtrix may be settled and decree made for the distribution of moneys in her hands to the persons entitled thereto. Upon the infant daughter, Gloria, being brought into court, and on February 27th, 1924, the clerk of the court of chancery was assigned and appointed her guardian by whom she might appear and answer and defend that suit. Later, Martin V. Bergen, Esquire, was appointed counsel to represent such guardian. Mr. Bergen, as solicitor, has filed an answer for the infant Gloria Caruso, by the clerk of that court, which is litigious, and which, after setting up many matters on behalf of said infant, prays that all of the principal of the estate in New Jersey, including the Victor contract and payments thereunder, be decreed to be the property of the defendant, Gloria, as sole distributee of the estate of Enrico Caruso, deceased, subject to the payment of such share or proportion of the income arising therefrom as Mrs. Caruso, her mother, may be entitled to receive during her lifetime.
Thus, it appears that a guardian ad litem, namely, aspecial guardian in that cause, has been appointed for the infant defendant to conserve and protect the only property, real or personal, within this state, which she, a non-resident minor, now has. It must abundantly appear that it is absolutely unnecessary to appoint any other guardian to protect this property. *Page 222 
A rebate of income taxes from the federal government is not one of the issues in the chancery suit, and it may be that a guardian of the infant should appear before the federal tribunal to urge such rebate. While the general prayer of the petition in this case is for "letters of guardianship of the person and property of the said Gloria Caruso," there is also a prayer for "such other relief as may be just and for the best interests of the said orphan minor."
As shown above, it is quite impossible to appoint Mrs. Caruso ageneral guardian for Gloria in this matter, but I think it still is my duty to give Mrs. Caruso an opportunity to apply for appointment as special guardian of Gloria, to move the federal government for the purpose aforesaid; the letters, if issued, are to be limited to prosecuting such appeals with reference to the property of Gloria, which should be in this state, and with direction that upon their recovery, if recovered they be, they are to be paid into the court of chancery of this state in the cause therein depending, which is above set forth.
Decree accordingly.