Application having been made by Mrs. Dorothy P.B. Caruso for letters of guardianship of the estate of Gloria Caruso, her infant daughter, in the prerogative court of this state, after leave granted in this cause, and having been appointed by that court on January 24th, 1928, special guardian of the said minor for the purpose of applying to the court of chancery for an allowance from her estate for her support, maintenance and education according to her station in life, the question of the amount of bond to be given by the guardian was reserved until the court should have adjudicated the matter of allowance to be applied for. The authority for such appointment, and the facts of the case are fully set out In re Caruso, 101 N.J. Eq. 215, andCaruso v. Caruso, 101 N.J. Eq. 350.
In Caruso v. Caruso, supra, questions reserved until the guardian for Gloria might be appointed, were: (1) as to the validity, by comity, of the Italian decree; (2) the amount, if any, to be awarded for Gloria according to her station in life, and (3) what is principal and what income, under the contract between the late Enrico Caruso and the Victor Talking Machine Company. These questions are therefore now ripe for decision.
First. As to the validity in New Jersey, by comity, of the Italian decree.
Assuming that this decree, and amendments, made in Italy upon the application of the Caruso heirs (named in his testamentary *Page 396 
paper filed there), who were all present before the court and who had entered into a family agreement or settlement which the court approved, operated by its terms on all the parties, nevertheless, an interested party was the infant daughter of Enrico Caruso, and of his wife, Dorothy P.B. Caruso, the petitioner herein, who, the infant, appeared by a guardian appointed by the Italian court and consented to its decree; but, in this state, as will hereinafter appear, an infant may neither consent herself, nor her guardian for her, to any substantive principle affecting her rights, and, therefore, the Italian decree cannot operate to defeat the right of Gloria to her interest in the property of her father in this state, which is subject to the jurisdiction of our courts — even assuming the validity of the Italian decree for other purposes in this state, and which it therefore is unnecessary to decide.
It will be observed that the Italian decree undertakes to deal with the property of the late Mr. Caruso, arising out of his contract with the Victor Talking Machine Company, and which is the subject of the controversy in this cause.
After dividing certain property of the decedent to the consenting heirs, including the infant Gloria, it proceeds to adjudge division of the residue as follows: One-half to decedent's daughter, Gloria; the other one-half, one-quarter to Mrs. Caruso, widow; one-quarter to Rodolfo Caruso (natural, though recognized, son); one-quarter to Enrico Caruso (natural, though recognized, son), and one-quarter to Giovanni Caruso, brother. That makes one-eighth each to the last four. The decree also provides, among other things, as follows:
"Art. 2. In virtue of the amicable and good-natured arrangement interceded among the constituted heirs and ratified by the tribunal of Naples, thanks to deliberation of October 21st, 1921, first section, which in the full her contents is accepted by all the constituted parties and herewith enclosed a copy, the patrimony of the defunct Commander Enrico Caruso, son of the late Marcellino, is distributed as follows:
"One-half to the legitimate daughter, Gloria, besides special allowance of the capital of lire 500,000, as in narration, and the collections; the other half, always in full property, for one-fourth to Mrs. Dorothy Benjamin, Caruso's widow, another *Page 397 
fourth to Mr. Rodolfo Caruso, another fourth to the minor Enrico Caruso [now of age], and the last fourth part to Mr. Giovanni Caruso, son of the late Marcellino, defunct man's brother german.
"Art. 3. From the patrimony of the regretted Commander Enrico Caruso, ascertained through the inventories in narration, accepted from the heirs in their contest and in all the declaration therein contained, ascertained also through the sworn verification, herewith enclosed, before proceeding to the formation and attribution of the quotas, are made, as said in narration, the following previous deductions to put aside:
"(1) The copyrights correspond with the reward of ten per cent. by the respectable Victor Talking Machine Company on the sale of the disks for gramophone performed by Commander Enrico Caruso, which reward shall be in the future divided and attributed to all the heirs in proportion of their quotas."
The decree, predicated on the settlement, gives one-half to the infant and makes the mother guardian with right to appropriate the infant's share to herself without accounting, while our law gives the mother only one-third and the daughter two-thirds, and requires the mother, as guardian, to account.
The supreme court of the United States, in Black v. Zacharie Co., 3 How. U.S. 483; 11 L.Ed. 680, 704, held: "It is well settled as a doctrine of international jurisprudence, that personal property has no locality, and that the law of the owner's domicil is to determine the validity of the transfer or alienation thereof, unless there is some positive or customary law of the country where it is found to the contrary."
In London, c., Bank v. Aronstein, 117 Fed. Rep. 601, the circuit court of appeals of the ninth circuit, said (at p.608): "Recognition of its [the corporation's] existence in other states, and enforcement of its contract made therein, rest upon comity, and not upon inherent right. Under this comity California extends to foreign corporations the privilege of exercising the power conferred by their charters beyond the limits of the country wherein they have their origin and existence. The only restriction on this rule of comity is that *Page 398 
in giving effect to the foreign laws the state has properly taken the precaution to prescribe regulations and impose certain conditions, in order that no wrong, injury or injustice may be done to its own citizens, and to see that the policy of its own laws is in no way contravened or impaired." No citizen is here appealing for protection, but our own local law is to be vindicated.
In Freem. Judg. (5th ed.) 3048 § 1484, it is laid down:
"The courts of one nation have no authority over persons resident, or immovable property situate within the territorial limits of another nation, unless founded upon the voluntary submission of such persons to the jurisdiction of the foreign courts."
That, of course, means persons sui juris.
And it has been held in this state that while the rights of infants are not superior to those of adults, the difference between the two classes of persons is, that the rights of infants must be protected by the court, while adults must protect their own. In re Shreve, 87 N.J. Eq. 7; affirmed, Ibid. 710, for the reasons given by the chancellor. And this court held in Caruso
v. Caruso, supra (101 N.J. Eq. 350), that nothing can be taken as admitted against an infant, either by his default or on the answer of his guardian; and that it is the rule, that a next friend or guardian, cannot, by admissions or stipulations, surrender the rights of an infant. And this court held that minors cannot make an election themselves, and a guardian is without authority to make it for them. Brengel v. O'Toole,101 N.J. Eq. 449.
It therefore appears that the rights of the infant Gloria were not concluded by the Italian decree and this application of her guardian lies in her behalf.
Second. As to the amount, if any, to be awarded to Gloria's guardian for her support, maintenance and education according to her station in life.
The last duty of parents to their children is that of giving them an education suitable to their station in life, a duty pointed out by reason and of far the greatest importance of any.1 Bl. Com. [*]451. As a rule a widow is not bound to support her minor children out of her own property if they *Page 399 
have means, and she is entitled to a complete indemnity out of their estate for the money expended by her for their maintenance within proper limits. Pyatt v. Pyatt, 46 N.J. Eq. 285, 287.
See, also, Caruso v. Caruso, supra. And it has already been held in this court that the instant case is not an ordinary one, requiring the guardian to make the allowance in the first instance, relying upon the court afterwards to pass the account, but is an extraordinary one, and this court may, in its discretion, authorize the guardian, in advance, as to how much of the estate of the ward may be expended for her benefit; assuming that such authorization be made. Caruso v. Caruso, supra.
It is, of course, one of the first and highest duties of a guardian to provide for the maintenance and education of his wards in manner befitting their condition in life, limited, of course, by the means at his command available for the purpose.Re Adkins' Infants, 33 Ont. L. 110.
Necessaries, it is stated, consist of food, drink, clothing, washing, medical attention and a suitable place of residence, and they may be regarded as necessaries in the absolute sense of the word. However, the liability for necessaries is not limited to articles required to sustain life; it extends to articles which would ordinarily be necessary and suitable in view of the rank, position, fortune, earning capacity and mode of life of the husband. 30 C.J. 601. And this, of course, means that of the father when he is dead. Such things are necessaries in the legal sense as are usual and proper for the use of a family in the circumstances of the parties. Sulter v. Mustin, 50 Ga. 242,244. The question as to what are, and what are not, necessaries in a case of this kind depends in large measure upon the scale and style of living adopted by the husband. Wickstrom v. Peck,148 N.Y. Supp. 596, 598.
The rule is that where an infant has property of his own and his father is dead, or is not able to support him, he may be maintained and educated as may be fit out of his income of property his own, by the person in whose hands the property is held; and a court of equity will allow all payments made for this purpose which appear upon investigation to have been reasonable and proper. Schoul. Dom. Rel. 869, 871. *Page 400 
As was truly said by Hochehimer in Custody of Infants, page 169, an administrator appointed under the laws of a foreign state cannot act as such in another state, nor, for like reasons, can a guardian appointed by virtue of the statutes of one state exercise any authority elsewhere over the person or property of his ward.
And so it appears, that an allowance may be made for the living expenses of the infant Gloria according to her station in life, not by the Italian tribunal, but only by this court, her property being within this state and subject to the judgment of its courts; especially so, as the Italian law, crystallized in its decree, is far less favorable to this infant than is our own law, operating upon the status present.
The petitioner, Mrs. Caruso, among other things, in her original petition filed in this cause, prays that she may be authorized to apply the sum of $30,500 per annum to the maintenance, education and household expenses, including the support of the household in the style such as the infant has been accustomed to and consistent with the estate to which she is entitled, and alleges the following:
"That the petitioner, in her personal capacity, has an income of approximately $9,000 per annum, applicable to the support of herself and another child as well as said Gloria Caruso, and that the sum is insufficient to support the said Gloria Caruso in the style and manner to which she had been accustomed and to which she is entitled in view of the estate left by her father and the share of same which will ultimately fall to her.
"That the annual expenses of maintaining the household in the manner to which the said infant is accustomed are approximately as follows:
Rent of apartment in New York City .......................... $6,000.00
Salaries of servants ........................................ 4,500.00
Insurance ................................................... 500.00
Various household expenses, light, telephone and sundries, .. 2,000.00
Food for household .......................................... 7,200.00
Clothing .................................................... 5,000.00
Automobile .................................................. 4,000.00
 __________
 $29,200.00
Less income of Mrs. Caruso as above ......................... 9,000.00
 __________
 $20,200.00
 *Page 401 
"Expenses relating specifically to infant:
Nurse, salary ..................................... $1,500.00
Education — school .......................... 600.00
French and Italian ................................ 1,100.00
Music ............................................. 500.00
Dancing lessons ................................... 100.00
Doctor for medical attention ...................... 500.00
Clothing for infant ............................... 2,000.00
Approximate expense of annual trip to Italy
 and return with infant and of residence there
 pursuant to order of Italian court, by which
 it was provided that at least four months of
 the year should be passed in Italy by infant —
 transportation and other expenses ............... 4,000.00
 _________ $10,300.00
 __________
 $30,500.00

This petition is verified generally by the petitioner's affidavit to the petition annexed.
Mr. Alfred F. Seligsberg, the New York attorney for Mrs. Caruso, swears that he is thoroughly familiar with her personal estate and corroborates her as to the matter of income she claims. And this case was not requested to be set down for trial, but all parties interested in this question attended before the chancellor and submitted to the more or less summary hearing on petition, answers and affidavits.
While the fact of Mrs. Caruso's income is alleged to be much greater than stated, objection is not made to the form in which it is stated and sought to be proved. And the counsel on both sides have submitted their own affidavits as to the facts, which is contrary to established practice (Garrett v. Garrett,86 N.J. Eq. 293), and, besides, the affidavits abound in all sorts of hearsay, characterizations and conclusions, contrary to the rule which requires that facts only may be testified to by witnesses, leaving all inferences to be suggested by way of argument and to be decided by the court. Also in violation of established rule. In re McCraven, 87 N.J. Eq. 28. However, nothing appears to warrant the court declining to decide this cause.
It matters not how small or how large Mrs. Caruso's income is, if her infant daughter Gloria has an income of her *Page 402 
own which is ample for her support, for under our doctrine, she, as guardian, is entitled to use that, or as much of that as may be reasonably necessary, for the upbringing of her child, according to its station in life, and the amount that may be used is the subject of adjudication here.
Mr. Bergen, in his affidavit, makes this statement, which is accepted by the parties.
"Deponent further says that the payments made by the Victor Talking Machine Company to Dorothy P.B. Caruso, ancillary administratrix of Enrico Caruso, since his death are as follows:
For the year 1921 ................................... $422,981.56
For the year 1922 ................................... 125,177.66
For the year 1923 ................................... 105,922.59
For the year 1924 ................................... 122,475.34
For the year 1925 ................................... 71,194.22
For the year 1926 ................................... 74,210.20
For the year 1927 ................................... 74,762.75

"In these payments the Victor company deducted five per cent. from the amount due under the agreement, as a withholding at source on account of income tax.
"Deponent states that large sums were for a time disbursed and distributed by the ancillary administratrix out of these New Jersey assets, but the sums as received during the last few years are deposited under the order of this court in a depository named by it, and payments out of the same is restricted. Deponent avers that the total sum now on deposit as the whole balance of these Victor payments is, as of February 15th, 1928, $741,449.20, and that these sums are deposited under an agreement by which they draw four per cent. interest."
By order of this court dated March 31st, 1925, it was directed that all moneys and securities in the hands of, or which shall come into the hands of, the ancillary administratrix (Mrs. Caruso), be deposited and retain on deposit with the Union Trust and Hudson National Bank of Jersey City, subject to such orders and decrees as may be made in this suit, and that no payment shall be made therefrom except upon order of this court in the above-mentioned cause, c. *Page 403 
The late Enrico Caruso died August 2d 1921, without any original will proved in New Jersey, or any copy of one proved elsewhere filed here, and his estate left here, so far as his infant daughter is concerned, is distributable under the Orphans' Court act of 1918 (P.L. p. 180; Comp. Stat. Cum. Supp. p. 628), which is one-third of the surplus of the personal estate to the widow and all the residue to the children; and as there is but one legitimate child, then the remaining two-thirds to that child.
The fund subject to the order of this court in this cause is all personal estate, and that includes money, chattels, things in action and evidences of debt. Bouv. Dict. (Rawle's 3d Rev.)2577. And this is all money. However, it may be corpus or income, or part one and part the other, and that will be the next question. Therefore, the amount to be awarded for the annual support of the infant according to her station in life will be reserved until that question is decided. For there is a conflict here as to what the fund represents, whether corpus or income; the petitioner, Mrs. Caruso, claiming that all is income, and the guardian at litem claiming for the infant Gloria that all iscorpus. And it is suggested that it may be part income and partcorpus.
I think that Mrs. Caruso, as guardian of her infant daughter, is entitled to an allowance for the upbringing of Gloria according to her station in life, out of the income of the estate of Gloria; but, if it be corpus, then another rule applies, and that is, that encroachment may be made upon principal, only when necessary, for the maintenance and education of an infant.
In Stephens v. Howard's Executor, 32 N.J. Eq. 244,
Vice-Chancellor Van Fleet held that where a legacy vests in an infant but is payable when it attains a certain age, and its father is unable to support it, and the interest arising from the legacies is not sufficient for that purpose, a court of equity may, in advance of the time fixed for payment by the will, order the principal of the legacy applied to the support of the legatee. However, the question of the necessity of expenditure out of the principal of an infant's estate for his *Page 404 
maintenance is sometimes left to the judgment of the guardian, subject to the supervision of the court on the settlement of the estate. Pfefferle v. Herr, 75 N.J. Eq. 219, 223. The question of allowance, and the amount thereof, will therefore be deferred until after the decision of the next question.
Third. What is principal and what income under the contract between the late Enrico Caruso and the Victor Talking Machine Company?
Now, the agreement in question was made January 1st, 1919, between the Victor Talking Machine Company, a corporation, with its principal place of business in Camden, New Jersey, called the Victor Company, and Enrico Caruso, then residing in the city of New York, called the artist; that he agreed at mutually convenient times to go to the recording laboratory of the Victor Company for the purpose of making records of his voice, and would there sing, and when requested would repeat, for the Victor Company, forty selections of solos and concert numbers, the company to make records and to manufacture, advertise and license and sell any or all rights and powers in all parts of the world,c.; that during the life of the artist, in the period of ten years, the Victor Company agreed to pay him the sum of $100,000 each year, which sum was thereby guaranteed; that certain accounts were to be kept, c., and an allowance or royalty of ten per cent. of the list or catalogue price of such records was to be paid by the Victor Company; that if at the end of any year the allowance at the rate indicated should exceed the sum of $100,000, the Victor Company agreed to pay to the artist whatever should be the excess of such allowances over the sum of $100,000; for so much of the period of the agreement as should remain after the minimum payments shall cease, the Victor Company should pay the artist the percentage royalty appearing to be due for such remainder; the artist agreed that he would not during the period mentioned make or permit to be made a record of his voice for any other person, party or concern than the Victor Company, c. Covenants were to apply to, bind, and were for the benefit of the heirs, *Page 405 
executors, administrators, successors and assigns of the parties. So much for the agreement. And the obligation of the Victor Company under it to Mr. Caruso in his lifetime, and to his estate after his death, was and is to pay in cash the sums specified therein.
It is perfectly apparent that the duty of the Victor Company is fixed by its contract with the artist, and that duty simply is to pay for the records in cash as therein specified. Its interest does not extend beyond payment to the proper person. It has no interest whatever as to whether the fund is principal or income to the distributees; it has no interest whatever in the distribution made of the fund after it passes to one entitled to receive it, and it would be amply protected by the order of a court of competent jurisdiction disposing of the fund. It is merely a nominal, and not a necessary, party to this suit. SeeOliver v. Jersey City, 63 N.J. Law 634.
Under the Italian agreement residing in the decree there, one-half of the Victor royalties go to Gloria but the agreement provides that of her share of these royalties one-half should be segregated in the Italian bank for her, and the other half should be paid to Mrs. Caruso, giving force to the Italian law that the mother (the father being dead) is the natural guardian of the infant and as such is entitled to all the infant's income during her minority without accountability. Our law gives the infant two-thirds instead of one-half, and requires accountability by the guardian. A distinct advantage over the Italian law in both respects.
In Robinson v. Pierce, 278 Pa. 372, the decedent leased, demised and granted the right to mine and remove coal lying under the ground, the grantee to pay a certain sum each year until all the coal leased should be paid for, and the court said (at p.375): "If the transfer by Robinson constituted a sale in place, and we so hold, the payments of royalties or rents are to be treated as purchase-money, and for the purpose of distribution considered as personalty. Hosack v. Crill, 18 Pa. Super. 90; affirmed, 204 Pa. 97; Dorr v. Reynolds, 26 Pa. Super. 139; Hope's Appeals, 29 W.N.C. 365; Fairchild v. Fairchild,9 Atl. Rep. 255; Murray's Est., 216 Pa. 270." *Page 406 
In Eley's Appeal, 103 Pa. 300, the court said (at p. 306): "In seeking for the testator's intention, we derive little or no assistance from that class of cases in which it has been properly held that a lease of exclusive right to mine and remove coal or other minerals, without limitation as to quantity or time, is practically a sale of the coal or other mineral in place, and, consequently, a sale of a portion of the land itself. The word income means the gain which accrues from property, labor or business. In its ordinary and popular meaning, it is strictly applicable to the periodical payments, in the nature of rent, which are usually made under coal and other mineral leases, and we have no doubt it was used in that sense by the testator."
The proceeds of sale of building stone taken by executors from quarries on testator's land, which were open before his death and never abandoned, are part of income given by testator to widow and son. Gaines v. Green Pond Mining Co., 33 N.J. Eq. 603
(court of errors and appeals). See, also, Mulford v.Mulford, 42 N.J. Eq. 68.
Very little is to be gained by delving into cases of testamentary disposition to ascertain the intention of the testator, as remarked by the superior court of Pennsylvania. Here we have no expressed intention of the late Mr. Caruso, as to the character in which his estate should pass to any inheritor. So we must ascertain what this income is, by ascertaining what our law says it is.
The proceeds of the sale of land for the purpose of distribution retain the character of real estate. Servis v.Dorn, 76 N.J. Eq. 241; Hackensack Trust Co. v. Tracy, 86 N.J. Eq. 301,303. And, equally, personal property and income retain their characteristics as such and pass to successors in the same character as they existed in the hands of the intestate. A receiver takes the property of the defunct corporation in the same situation as it was in the possession of the corporation itself. Bankers Trust Co. v. Maxson, 100 N.J. Eq. 1, 8. See, also, Kuser v. Wright, 52 N.J. Eq. 825 (at p. 828).
In Aronson v. Baker, 43 N.J. Eq. 365, 367, Vice-Chancellor *Page 407 
Van Fleet said that the acquisition and succession to literary property (consisting of literary, dramatic or musical composition, or design for work of ornament or utility planned by the mind of an artist) are governed by the same legal rules which control the acquisition and succession of other property of the same general class.
There can be no doubt but that Mr. Caruso, under the terms of the above-mentioned agreement, sold all the products of his remarkable tenor voice, which were recorded, as stated, by the Victor Company, outright and exclusively to that company for the period named, and that the selling price was to him income; and he expressly covenanted that the purchase price should inure to the benefit of his heirs, c. It could have been made payable to him, or in the case of his death, to his heirs, in a gross sum, but, instead, was made payable in installments as to him and necessarily as to them. The character of the fund is not thereby changed; that is, is not changed from income into corpus
because made payable in installments instead of a gross sum. In my opinion the payments to be made under this agreement are clearly income — all income. The usufruct from the royalties payable by the Victor Talking Machine Company to the estate of Enrico Caruso, deceased, is all income.
Having concluded that these payments are income, and that it is distributable one-third to Mrs. Caruso, the widow, and two-thirds to Gloria Caruso, the infant child, according to the intestate laws of New Jersey, I find that Mrs. Caruso, the mother, as guardian in this state, appointed by decree of the prerogative court for the limited purpose of applying for an allowance from the estate of Gloria for her support, maintenance and education, is entitled, although having an income of her own, to be awarded a sum in this court's judgment, out of the estate of Gloria, to be devoted to that purpose according to her station in life.
The late Mr. Caruso, husband of the petitioner and father of the infant defendant, was, as is well known, the most distinguished tenor singer of his day, commanded large audiences, was a very great money earner and a rich man. The *Page 408 
family lived in commensurate style, and, had he lived, they doubtless would have had everything that heart could desire. Instead, he died and left the money. And it is befitting that the court should make an allowance for the support of the young daughter according to her station in life.
Mrs. Caruso claims an expenditure of $10,300 specially relating to the infant, which I do not deem unreasonable. Of her own expenses there are rent, $6,000; salary of servants, $4,500; food, $7,200; automobile, $4,000, and, in my judgment, the infant should make some contribution toward these necessary expenses, as she enjoys their benefit.
I will allow $1,000 per month, or $12,000 a year, out of the proceeds due and to grow due under the Victor Company's contract with the artist, until the further order of the court, the allowance to commence on the date of the filing of the petition therefor. The guardian to give bond to the ordinary, with surety, to be approved by him, for the faithful performance of her duties in the premises, in the penal sum of $25,000.
The parties hereto, or either of them, are at liberty to apply to this court for further direction if occasion shall require.
Decree accordingly.