There has already been an opinion written upon various phases of the litigation in this case. Caruso v. Caruso, 102 N.J. Eq. 393.
The decision here to be made is largely the application of law already decided in the case cited, where I said (at p.395): "As to the validity in New Jersey, by comity, of the Italian decree. Assuming that this decree, and amendments, made in Italy upon the application of the Caruso heirs [named in his testamentary paper filed there], who were all present before the court and who had entered into a family agreement or settlement which the court approved, operated by its terms on all the parties, nevertheless, an interest party was the infant daughter of Enrico Caruso, and of his wife, Dorothy P.B. Caruso, the petitioner herein, who, the infant, appeared by a guardian appointed by the Italian court and consented to its decree; but, in this state, as will hereafter appear, an infant may neither consent herself, nor her guardian for her, to any substantive principle affecting her rights, and, therefore, the Italian decree cannot operate to defeat the right of Gloria to her interest in the property of her father in this state, which is subject to the jurisdiction of our courts — even assuming the validity of the Italian decree for other purposes in this state, and which it therefore is unnecessary to decide." *Page 490 
Now, in conformity with the law which recognizes the validity of foreign judgments and decrees as matter of comity between sovereign states, I hold upon this final hearing that the original decree of the Italian court ordering distribution generally of the assets of the estate of Enrico Caruso, deceased, is valid here, save so far as it conflicts with the distribution declared in New Jersey for the benefit of the infant Gloria Caruso, who, under our law, acquires a far better standing than she does under the Italian decree; for here she obtains two-thirds of the income from the Victor Talking Machine Company, which is income of the estate of her deceased father, whereas, by the Italian decree she receives only one-half and it makes her mother guardian, with right to appropriate the infant's share to herself without accounting; while our law gives the mother only one-third and the daughter two-thirds, and requires the mother, as guardian, to account. Caruso v. Caruso, supra (at p.397). The consent given by her guardian in Italy to the decree of that kingdom's court cannot be accepted here, for the reasons stated in Caruso v. Caruso, supra, citing Caruso v.Caruso, 101 N.J. Eq. 350, 356.
An amendment to the decree of the Italian court is truly astonishing. It breathes defiance to the court of chancery of New Jersey, and declares that it will retaliate and enforce the distribution which it has decreed, out of the estate which it controls so as to make up to those denied pro tanto
distribution of New Jersey assets, to the end that the infant may receive only what the Italian decrees provides, and may deny to her what the genius of our law gives her in that behalf.
In the brief submitted on behalf of Enrico Caruso, Jr., is the following:
"To so act with respect to the property, supposedly within the control of this court, as that, to say the best for the infant, there will be reprisals wherever reprisals are possible. The Italian court, by the decree of August 26th, 1925, has frankly stated that, if its decrees are not recognized by the courts of this state, the decrees of this court will not be recognized in Italy and all of the aid and assistance which the Italian courts *Page 491 
can give will be devoted to making reparation to Enrico Caruso, Jr., and Rodolfo Caruso for what this court may take away from them, and, in this connection, let us also say that no Italian court will recognize the decree of this court directing the distribution of any moneys in the control of this court or directing the Victor Talking Machine Company to pay otherwise than in accordance with the Italian decree as protecting the Victor Talking Machine Company. Nor do we believe that the courts of any other jurisdiction, outside of the United States, will recognize the decree of this court as protecting the Victor Talking Machine Company."
In what singular contrast to this, both on the part of the Italian court and counsel for Enrico Caruso, the younger, is the language of Chancellor Pitney, in Bigelow v. Old DominonCopper Co., 74 N.J. Eq. 457 (at p. 473), where he said: "I have not the least doubt or difficulty about the power of a court of equity in one state to restrain its own citizens, or other persons within the control of its process, from the prosecution of suits in other states or in foreign countries. The power proceeds from the undoubted authority that a court of equity possesses over persons within its jurisdiction to restrain them from doing anything that is contrary to equity and good conscience, to the wrong and injury of others, whether the threatened inequitable conduct consists in the prosecution of an action or whatever it may happen to be.
"The court of equity thus appealed to acts in personam, and it is immaterial whether the threatened inequitable conduct is to be carried on within or without the limits of the jurisdiction.1 High. Inj. § 103; Story Eq. Jur. (12th ed.) §§ 899, 900;Margerum v. Moon (18 Dick.), 63 N.J. Eq. 586, and cases cited.
"But on general principles, equity will not interfere with the right of any person to bring an action for the redress of grievances — the right preservative of all rights — except for grave reasons, and on grounds of comity the power of one state to interfere with a litigant who is in due course pursuing his rights and remedies in the courts of another state ought to be sparingly exercised. The courts of New Jersey ought *Page 492 
not to assume, directly or by indirection, any appellate jurisdiction over the courts of Massachusetts, nor proceed in giving judgment here upon the idea that the courts of that commonwealth are in the least degree incompetent or unwilling to do full and complete justice in all cases that are fairly within their jurisdiction."
The rule enunciated by the learned chancellor, and above quoted, is, of course, one of reciprocity, and is, or ought to be, recognized by the courts of all countries.
The power of the court of chancery of New Jersey to restrain its own citizens or other persons within the control of itsprocess from the prosecution of suits in foreign countries is postulated. And the assertion is made that the courts of New Jersey ought not to assume, directly or by indirection, any appellate jurisdiction, nor proceed in giving judgment here upon the idea that the courts of foreign states are in the least degree incompetent or unwilling to do full and complete justice in all cases that are fairly within their jurisdiction.
Now, the power in this court exists, and turning this general principle upon the Italian court, it may well be asserted that the Italian court should not presume that this court is in the least degree incompetent to do full and complete justice in cases that are within its jurisdiction, regarding property that is here and subject to our laws. Our law is here involved. And I regard its application as mandatory on this court in the circumstances before me. A threat of reprisal upon the parties litigant will not deter this court one iota in doing its full duty under the law of this state in its operation on property situate here, for the benefit of an infant whose protection is the duty and function of this court of equity and good conscience.
The supreme court of the United States, in Black v. Zacharie Co., 3 How. (U.S.) 483; 11 Law Ed. 680, 704, held: "It is well settled as a doctrine of international jurisprudence, that personal property has no locality, and that the law of the owner's domicile is to determine the validity of the transfer or alienation thereof, unless there is some positive or customary law of the country where it is found to the contrary." *Page 493 
There is a positive law of this state operating upon the property which is found here, namely, the statute of distribution, the latest enactment of which is to be found in P.L. 1918 p. 180;Comp. Stat. Cum. Supp. p. 2628 § 169. This provision reflects the public policy of this state and is to be enforced by this court unless waived by all parties who are sui juris. The legislature, and not the courts, makes public policy. And the grant of the legislature must fix for the courts the character and limit thereof. Trenton Potteries Co. v. Oliphant, 58 N.J. Eq. 507,524; Dittman v. Distilling Company of America, 64 N.J. Eq. 537,545; Earle v. American Sugar Refining Co., 74 N.J. Eq. 751,762.
It is submitted on behalf of the guardian ad litem that the court of Naples had no jurisdiction to make the decrees it did, and that, because the deceased was not domiciled there but in the Province of Florence, Tuscany, Italy. The complainant contends to the contrary, that the domicil of the deceased was at Naples, and that the tribunal of that province had power to appoint a special guardian for the infant, and having acquired jurisdiction for that purpose retained it for the family settlement, and that this was set at rest by the expressed approval of the public minister (attorney-general), whose function, among others, under judicial ordinances of Italy, is to pass upon the jurisdiction of the court.
I should not assume, directly or indirectly, any appellate jurisdiction over the Italian courts, and on this subject I deem it to be my duty to leave it where the Italian court leaves it, that is, assume the jurisdiction of the court of Naples to approve the family settlement, and for that matter, order a distribution of the estate according to its decision; but, I repeat, that does not give the decree validity in New Jersey for the purpose of varying our positive law of distribution founded upon public policy; and that, as to the infant, must be the decision here.
Mrs. Caruso, the mother of the infant Gloria, in her bill of complaint filed herein, asserts the following:
"Complainant is advised and states the fact to be that under the law of the Kingdom of Italy, she, as surviving *Page 494 
parent, is the natural and general guardian of her daughter, Gloria Caruso, during the latter's minority and until she reaches the age of twenty-one years, and, as such, entitled to receive from time to time all income belonging to said infant, and to use, hold, or otherwise dispose of the same without accountability."
A mere glance at this claim, crystallized in the decree of the Italian court, shows that it cannot for a moment be given effect in this state as against the rights of the child guaranteed by our law of distribution, which would give her two-thirds of this estate, and for which accountability exists, as this secures her share of the estate to her; the other does not. This is but a statement of the law of New Jersey. See Caruso v. Caruso,102 N.J. Eq. 403.
Complainant further alleges in her bill that she has fully administered all moneys coming into her hands as administratrix and that pursuant to the Italian law all assets of said estate now in her hands, including all rights under the aforesaid contract with the Victor Talking Machine Company, belong to the persons specified by the family settlement and agreement and decrees of the Italian court, validating and confirming the same. This proposition cannot be admitted, as the trust is not ended but must continue for an indefinite period.
The bill prays, among other things, that the accounts of complainant as administratrix may be settled and a decree made for the distribution of the moneys in the complainant's hands to the persons entitled thereto, as aforesaid; that it may be determined what portion of the moneys arising or to arise out of the aforesaid royalty contract is principal and what portion is income, and that the determination of the Italian court with respect thereto be ratified and confirmed; that it may be decreed that the moneys heretofore received by complainant as administratrix, subject to the costs of administration, and all moneys hereafter payable under said royalty contract, and all rights in said contract itself, are the property of complainant and the aforesaid Gloria Caruso, Rodolfo Caruso, Enrico Caruso, Jr., and Giovanni Caruso, *Page 495 
in the proportions above specified, and that said Victor Talking Machine Company be decreed to pay over the royalties from time to time accruing under said agreement to said individuals, or their lawful representatives, directly and without further intervention of complainant as administratrix; that upon settlement of the accounts of complainant and payment by her of such moneys as may be found to be due and payable, that she be discharged as administratrix, and that she and her surety be relieved of further liability upon her aforesaid bond as administratrix; and this bill is apparently filed under the general doctrine of Inre Riley, 92 N.J. Eq. 567.
Because of the continuing character of the contract between Enrico Caruso and the Victor Talking Machine Company, which, according to the bill of complaint itself, provides for the payment of royalties "for an indefinite time * * * upon sales by said company of talking machine records of the voice of the said Enrico Caruso, the amount of royalties to be so paid to be ascertained at the end of each calendar year," a trustee will have to be appointed, or the Victor Talking Machine Company may be decreed to make distribution from time to time, as hereafter stated. Mrs. Caruso herself prays for that, while contesting as to the amount of the shares.
It has already been determined that the usufruct arising from this agreement is income and not principal. Caruso v. Caruso,102 N.J. Eq. 393, 407. And in the agreement Mr. Caruso expressly covenanted with the Victor Talking Machine Company that the purchase price should inure to the benefit of his heirs, c. The covenant was mutual, the exact language being:
"The covenants of and rights granted by this agreement shall apply to, bind and be for the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto."
While this gift to the heirs of the late Enrico Caruso will continue indefinitely, the ancillary administratrix, who claims to have administered the estate of decedent, will have nothing to do with the continued collection and disbursement. The *Page 496 
Victor Talking Machine Company may be ordered to disburse directly to the ascertained beneficiaries, until the minority of the infant is removed by efflux of time. The court is not obliged to raise a trusteeship to receive and disburse the fund, as the Victor Talking Machine Company can do it without such intervention. See In re Riley, supra.
The general duties of an executor (and likewise an administrator) are to collect the effects of decedent, to pay the claims against his estate and distribute the residue to those entitled thereto. And a trustee is one in whom some estate, interest or power in or affecting property is vested for the benefit of another; and while an executor is a trustee in the broadest sense, he is not a trustee in the general acceptation of the term. In re Hibbler's Estate, 78 N.J. Eq. 217. The duties of an executor (or administrator) and those of a trustee are well recognized in the law as being distinct. Ibid. 219.
Chief-Justice Beasley said, speaking for the court of errors and appeals, in Pitney v. Everson, 42 N.J. Eq. 361 (at p.366): "It is true that throughout the will trustees are called executors, but this is a mere descriptio personarum, and even if otherwise intended, could not, as has been remarked already, alter, in any respect, the substantial qualities and attributes of the estate, which, in point of fact, has been called into existence." Thus it will be seen that no matter what the designation in a will, the office, whether of executor or trustee, will be determined by the character of the estate confided to, and the powers to be exercised by, the representative of the deceased.
Now, deceased Mr. Caruso appointed no trustee, but stipulated in the contract that it should run for the benefit of his heirs. As real estate is not involved, but only personal property, the word "heirs" means "next of kin." Smith v. Robinson, 83 N.J. Eq. 384; Meeker v. Forbes, 84 N.J. Eq. 271; In re Buzby,94 N.J. Eq. 151.
The duty of the administratrix is plain. It has been performed she says. The record in the prerogative office shows that she has taken an order to bar creditors, but not accounted. She must therefore account. The court is obliged to appoint *Page 497 
a trustee, or may provide that the Victor Talking Machine Company distribute the fund directly to the beneficiaries, and that it will do in this case. That the trust must continue is obvious; and the court of chancery has jurisdiction to establish it.Amparo Mining Co. v. Fidelity Trust Co., 75 N.J. Eq. 555.
The equitable rule is clear that where a voluntary trust is created for the benefit wholly or partly of a person other than the grantor creating it, and the relation of trustee and cestuique trust is thus established, it will be enforced. Filley v.Fownes, 81 N.J. Eq. 498, 499.
The Italian decree being necessarily valid at home, and, as already held, will be recognized and enforced here upon principles of international comity, save so far as it conflicts with our positive rule of law as to the distribution of an intestate's estate to his infant daughter, for whom consent could not be given, here or abroad, to accept less than the genius of our law gives to her as her share. The mother's share under our law of distribution is subject to the Italian decree and will insure to the benefit of the other members of the family who are provided for in the judgment of that court, as well as herself.
The infant, although awarded one-half of the estate here by the foreign tribunal, as against two-thirds given to her by our law, is not entitled to participate in her mother's share of the New Jersey assets, because, being given much more than the Italian decree awards her, she must take her share under our statute cumonere. She cannot have the advantage of both our law and the Italian decree where they conflict and our law gives her an advantage.
One who accepts a benefit under a deed or will must adopt the whole contents of the instrument, renouncing every right inconsistent with it. Yawger v. Yawger, 37 N.J. Eq. 216, 218;Ashby v. Ashby, 59 N.J. Eq. 547, 556. The general principle is that he who accepts a benefit takes it cum onere. Where the court, as in this case, gives to an infant the benefit of our law, as against a less advantageous gift to her under a foreign decree, she cannot have both the court's award and *Page 498 
the gift under the decree. And this is not adjudging a forfeiture. See 1 Pom. Eq. Jur. (4th ed.) § 460.
The result reached is that the foreign judgment will be recognized to the extent mentioned, complainant must account as ancillary administratrix, and may then be discharged as such. The Victor Talking Machine Company may be appointed trustee to distribute two-thirds of the issues and profits arising under the agreement to Gloria Caruso, infant, under proper restrictions, and the balance of one-third to the other parties named in the Italian decree, in the proportions adjudged and in accordance with that decree, excepting, of course, the infant, Gloria Caruso.
The complainant is entitled to enter a decree in this court and her solicitors should give notice to the others of a motion here to settle and sign such decree.