OF THE

## STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY,

AND PREROGATIVE COURT,

NOVEMBER TERM, 1886.

---

HENRY C. PITNEY, surviving trustee and executor of Austin
Requa, deceased, appellant,

*v.*

MARY C. EVERSON, respondent.

If a person be appointed in a will an executor and trustee, such person is
entitled to commissions, calculated on the *corpus* of the estate, in each capacity,
at such rate as will yield a reasonable compensation for the service in each of
such respective offices.

---

On appeal from a decree of the ordinary, whose opinion is re-
ported in *Everson v. Pitney, 13 Stew. Eq. 539.*

Austin Requa, late of Morristown, deceased, by his will, dated
April 17th, 1868, after providing that his debts and funeral ex-
penses be paid, gave to his wife all his movable property in his
house and on the premises on which he lived, except securities

361

for money. He then gave several general pecuniary legacies, viz. : to his daughter Mary C. Everson, $1,000 ; to his brother Leonard, $500, both payable in one year after his death ; to his two nieces, Fanny and Hannah Requa, $300 each, payable after his wife's death, and to Austin R. Hannah, $500, payable when he should have attained to majority. He then gave, devised and bequeathed to his executors thereinafter named, and to the survivor and survivors of them and to the heirs of the survivor, all the residue of his estate, in trust, first, as to his real estate, to take the rents, issues and profits thereof, and after paying the taxes and assessments and for repairs, to pay the balance of the rents, issues and profits to his wife for life ; and he authorized them to permit her to use and occupy any part of his real estate. He also authorized and empowered the executors, at their discretion and with her consent, to sell the whole or any part of his real property ; the proceeds of the sale to be added to and become part of his personal estate. Second, to invest the personal estate and keep it invested, and pay the net annual income to his wife. He gave his executors power, at their discretion, to pay to her, out of the corpus of his personal estate, such sum, not to exceed $500 a year, as would be sufficient to enable her to live in the homestead as comfortably as before his death, if, the income should prove insufficient for the purpose. He directed that at his wife's death they should dispose of all of his real estate, and directed that out of the body of his estate they should pay $6,000 to such person or persons as his wife by testamentary diposition might direct or appoint. He then gave a specific legacy and several general ones after his wife's death, and directed his executors, after the payment of the legacies and all the expenses of settling his estate, to divide the residue of his estate into two equal shares, and pay one of them to his daughter, and the other to his adopted son. By a codicil dated July 29th, 1870, he provided for the payment of $2,000 to a person therein named, provided such person should remain with him and his wife until the death of the survivor of them, and for compensation to that person at a fixed rate for the time during which she should remain, if she should not remain until death of the survivor.

He also, by that codicil, gave his wife a legacy of $1,000. By another codicil, dated April 5th, 1872, he increased that legacy to $3,000, and provided that the pecuniary legacies to Mary C. Everson, Leonard Requa and Austin R. Hannah should not be payable until after his wife's decease, and declared that it was his intention that she should have the income from and the use of his whole estate during her life. He died in the fall of 1872. His wife survived him. The will and codicils were proved by the executors, Henry C. Pitney and Nathaniel Fisher. They paid the debts and sold the real estate, and settled their accounts in the Morris orphans court in January term, 1875. The amount of the trust fund, as ascertained by that settlement, was $36,622.21. It was all invested upon bond and mortgage (eight different investments), except $250 in gas stock. Shortly after that settlement Mr. Fisher, one of the executors, died. Mr. Pitney, the other executor, has managed the trust since Mr. Fisher's death. The widow died in 1884. The trust in her favor continued for nearly ten years after the settlement of 1875. In November, 1884, Mr. Pitney filed his account as surviving trustee. The testator's daughter, Mary C. Everson, the appellant, excepted to it. The exceptions were all disallowed. Among them was one objecting to the allowance of commissions on the trust fund of $36,684.08. That sum is the amount of the fund as it stood at the settlement of the account of 1875, with $61.87 added for the increase of principal realized on the purchase and sale of government bonds belonging to the trust. The objection was based on the proposition that the executors held the trust fund as executors, and that they having, in 1875, received commissions upon it, the survivor was not entitled thereto a second time. From the decree of the orphans court, so far as that objection was concerned, the exceptant appealed. It appeared by the evidence in the orphans court that all of the investments except one, in which the funds stood invested at the passing of the account of 1875, were paid off, and that the money was re-invested by Mr. Pitney; that those payments were, in every case but one or two, voluntary, and in those foreclosure was necessary because interest was not paid. Seventeen new investments were

made by Mr. Pitney, and six of them were called in and collected for the purpose of settling the estate.

The executor was compelled to make the investments for short periods only, because of the necessity of calling in the money for the payment of legacies &c., at the death of the widow. At times principal remained in Mr. Pitney's hands for a considerable period of time for want of proper opportunity for investment. None of the principal has ever been lost.

*Mr. A. Mills,* for appellant.

*Mr. R. L. Lawrence,* for respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

Austin Requa, by his last will, after bequeathing to divers persons certain legacies, made the following disposition, viz. :

"All the rest and residue of my estate, real, personal and mixed, and wheresoever the same may be situate, I do give, devise and bequeath unto my executors hereinafter named, and to the survivor and survivors of them, and to the heirs of the survivor, in trust nevertheless, as follows" &c.

The will then proceeds to define the duties and powers of the executors with respect to the estate thus vested in them, which are, to take care of the property, and, after deducting expenses, to pay to the widow of the testator during her life the net annual income of the real and personal property. Capacity is given them, with the consent of the widow, to sell the real estate during the life of the widow, and in their discretion to encroach, within a defined limit, on the *corpus* of the estate in the event of such measure becoming necessary to enable the widow to live in a comfortable manner. On the death of the wife, the property was to be sold and the proceeds divided among certain persons in an appointed manner.

In the year 1875, the executors, having paid the debts of the estate, settled their accounts in the orphans court of the county

of Morris, and the amount of the trust fund, as ascertained in that mode, was $36,622.21. Shortly after this settlement, one of the executors died, and the widow died in 1884. It will be observed, therefore, that the appellant, as surviving trustee, has been administering the affairs of the trust for a long period of years since the settlement of his final account as executor, and in the year 1884 he filed his account as trustee, and the orphans court allowed him commissions for his services in that capacity, giving him a percentage on the *corpus* of the fund in his hands. This allowance was disapproved of by the surrogate-general, and it is from this latter decree that this appeal has been taken.

The view that led the chancellor to his conclusion was that the testator, by the provisions of this will, had not detached the executorship from the trusteeship, but, on the contrary, had so combined them that the one accompanied the other, and that consequently, double commissions, calculated on the *corpus* of the fund, were not allowable. Certain decisions in the courts of New York were cited and relied on in support of this conclusion. But these decisions do not rest on statutes similar, in pertinent respects, to those in force in this state, and they thus appear to be delusive guides. The theory which they predicate is that the two offices of executor and trustee are so incorporated, the one with the other, by the testator, that they cannot be disjoined for the purpose of compensating the person who has acted in such dual capacity for the services he has so respectively performed. I am not willing to adopt such an hypothesis, for it does not seem to me that such a situation can exist. In my opinion a man must act in one or the other of such capacities, and he cannot, in his administration of any part of the property committed to him, be said to act in a duplex character, for each act done must, in contemplation of law, be that of an executor or that of a trustee. Nor can a testator, even by the use of express terms for the purpose, create an office compounded of the two distinct offices of executor and trustee, for when the requisite conditions appertaining to persons and property exist, the law itself imperatively declares that such state of affairs produces a trust. If the situation, in point of law, plainly denotes a

trusteeship, the testator cannot convert it into an executorship by calling it such.

It is true that when the same person is both executor and trustee, it may, in some cases, be difficult to decide whether he has acted, in some particular matter, in the one office or in the other. Illustrations of this subject may be found by referring to *1 Perry on Trusts* § *263*. But it should be observed that this line of cases is not pertinent to the present inquiry, for the question is not now, as it was in the authorities referred to, whether a particular act was done in the character of executor or in that of trustee; but whether, in point of fact, there are two distinct offices created by this will. And in respect to that subject, the testamentary language in the present case appears to leave no particle of doubt, for the estate created has all the *indicia* and characteristics as well as the essential nature of a trust. The legal title of the property is vested in the trustee, from a confidence in him, for abuse of which, in the language of Lord Coke, "the *cestui que trust* has no remedy but by subpœna in chancery," and the will in express terms declares the estate devised to be a *trust*. It is true that throughout the will trustees are called executors, but this is a mere *descriptio personarum*, and even if otherwise intended, could not, as has been remarked already, alter, in any respect, the substantial qualities and attributes of the estate, which in point of fact has been called into existence.

It is obviously of considerable importance, in view of the provisions of some of our statutes regulating, in variant modes, the procedures in our courts relating to the affairs of executorships and trusts, to mark the line of separation between the two offices as plainly as may be practicable. The remedies, both in their favor and against them, are sometimes distinct and in different courts, and even the proceedings in the settlement of their accounts are unlike. In this state, the two offices have been heretofore discriminated and kept apart. And it would seem that the true rule of discrimination was defined, as clearly perhaps as is practicable, in the case of *Brush* v. *Young, 4 Dutch. 237*, a case which is prominently presented in the brief of the

appellant. The decision also is, in all respects, in point. In the instance referred to, the orphans court had appointed, under the statute, a trustee in the place of one nominated in a will, who had neglected to act, and the opposing contention was that by the will there was no such separate office as that of trustee, but that the so-called trust was but a part of the executorship. The testamentary disposition was this, viz. : The testatrix had devised and bequeathed certain personal and real estate to her executors for her son for life, and on his death to be divided among her daughters; and it was held that thereby a trust was created which was so entirely severable from the office of executor, that it was competent for the orphans court—the executor named in the will having refused to act—to appoint one person executor *cum testamento annexo*, and another person to put into effect the trust thus declared.

It will be perceived that the expressions of the will in the reported case were not, by any means, as plain, with respect to the creation of a distinct trust, as are the testamentary demonstrations in the case now in hand, and it is obvious, therefore, that this decision would have to be disapproved of by this court in order for us to concur with the doctrine of the prerogative court, that this trust is "inseparable from the executorship."

Both upon principle and authority it is deemed that this trust is to be treated as distinct, for all purposes, from the office of the executor.

The question then, from this premiss, arises, Why should not the trustee be paid a reasonable compensation for his services? It is true that he has already been paid a commission upon the settlement of his account, as executor, in the orphans court, but we must assume that the court proceeded legally, and that there was no allowance, except for past transactions; for this court has declared that in the settlement of the accounts of this class of officers, an allowance can be made only for the pains, trouble and work previously incurred, and not for the services which may be thereafter required. It must stand as an established fact, therefore, that this appellant has been paid only for his services

Pitney v. Everson.

as executor, and that in that respect he has been awarded only a reasonable sum.

Under such circumstances I can see neither justice nor public policy in the rule which would restrict the trustee to a percentage, within the limits prescribed by the statute, on the receipts of the income of the trust estate, which may have passed through his hands. Treating the office as a distinct one, there is no warrant in the statute for such a restriction, and if it existed, it would tend to inconvenience and injustice, for it is reasonable to conclude that, under ordinary circumstances, few persons would undertake the troublesome and responsible office of trustee if they were told that the law forbade the payment to them of a fair compensation for their work, time and trouble.

In the opinion of the court, the appellant should be dealt with as a trustee, and be allowed a reasonable percentage on the *corpus* of the fund in his hands.

The case must be remitted to the prerogative court for the ascertainment of such allowance.

With respect to the act of 1882 (*P. L. p. 230*), it appears to apply only in cases where an executor, or trustee under a will, having previously received his usual commissions on the body of the estate, proceeds to make collections of interest which grow due on money remaining in his hands in the form of investments. The statute does not relate to the case of a person who occupies both positions of executor and trustee, but it applies to the case of each officer separately. It has no effect upon the rights of a trustee, unless he has received, in the first place, his usual commissions as trustee, that is, commissions calculated on the *corpus* of the estate, and who afterwards makes further collections. Nor would it seem that any retrospective force is inherent in the act.

*Decree unanimously reversed.*