61 N.J. Super. 50 (1960)
160 A.2d 160
IN THE MATTER OF THE TRUST ESTABLISHED UNDER ARTICLE SEVENTH OF THE LAST WILL AND TESTAMENT OF BERNARD R. ARMOUR, DECEASED, FOR THE BENEFIT OF TOBY ARMOUR SCHNEIDER (FORMERLY TOBY ARMOUR) AND OTHERS. CHASE MANHATTAN BANK, GEORGE L. ARMOUR AND GEORGE F. LEWIS, JR., AS TRUSTEES, ETC., PLAINTIFFS-APPELLANTS. TOBY ARMOUR SCHNEIDER, EXCEPTANT, RUTH ARMOUR KAMEN, AND HARRY L. TOWE, GUARDIAN AD LITEM, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 1960.
Decided April 14, 1960.
*51 Before Judges PRICE, GAULKIN and SULLIVAN.
*52 Mr. Elmer J. Bennett argued the cause for plaintiffs-appellants (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. Stanley Weiss on the brief).
Mr. Dickinson R. Debevoise argued the cause for defendant-respondent Toby Armour Schneider, exceptant (Messrs. Riker, Danzig, Marsh & Scherer, attorneys; Mr. Richard L. Amster, of counsel).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiffs, trustees of the trust established under Article Seventh (c) of the will of Bernard R. Armour, deceased, appeal from the refusal of the trial court to allow them statutory commissions on $377,000 of trust income received by them.
Bernard R. Armour died on December 1, 1949, leaving a will which was admitted to probate in the Superior Court of New Jersey, Chancery Division, on December 19, 1949. In Article Fifteenth of the will testator appointed the president and directors of the Manhattan Company, now the Chase Manhattan Bank, George L. Armour and George F. Lewis, as executors of his will and trustees of the trusts therein created. On January 22, 1953 George F. Lewis, Sr. resigned as co-executor and co-trustee, and George F. Lewis, Jr. was duly appointed in his place and stead.
Article Seventh (c) of the will created a trust of one-third of decedent's residuary estate for the benefit of his daughter, Toby Armour (now Toby Armour Schneider). In substance, the trust provided that the trustees were to collect the income and apply so much thereof as in the discretion of the trustees was necessary for Toby's education, support and maintenance until she became 21 years of age, at which time all accumulated income was to be paid to her, and thereafter she was to be paid all of the net income. On her marriage one-third of the principal of the trust was to be paid to her. The trust terminates on her death, with specified remainder over.
*53 Toby Armour became 21 years of age on September 21, 1957, at which time she received the trust income which had accumulated prior thereto. Since then she had been paid the net income of the trust. On April 19, 1958 Toby Armour married Stephen J. Schneider at which time, pursuant to the terms of the trust, one-third of principal was paid over to her.
Plaintiff trustees in this action asked for the allowance of their first and final account with respect to the portion of the trust income and corpus which vested in Mrs. Schneider on her twenty-first birthday and her marriage respectively, and for the allowance of their first intermediate account as to the remainder of the trust. The trustees also asked for the allowance of corpus and income commissions. Mrs. Schneider filed exceptions to the trustees' request for income commissions on $395,381.02 of income, on the ground that $393,666.67 of such income was estate income received by plaintiffs as executors, who took income commissions thereon as executors and then transferred the money to themselves as trustees. The remaining $1,714.35 came from a trust created by Article Sixth of the will which plaintiffs, as trustees of that trust after taking income commissions thereon, also transferred to themselves as trustees of the Article Seventh (c) trust. The substance of the exceptions was that plaintiffs were seeking double commissions on these particular items of income. The trustees' request for commissions on corpus and on other trust income was not challenged.
The estate of Bernard R. Armour was inventoried at $19,571,513. Its administration was unquestionably complex and difficult. The executors have not yet completed the settlement of the estate. Substantial litigation is still pending and the federal estate tax and the New Jersey inheritance taxes are not yet resolved. About $1,500,000 remain in the estate. In the main, however, the trusts under the will have been fully established, and further distribution to them will be small in amount.
*54 When the executors became possessed of decedent's estate they ascertained that it had little cash or liquid assets. The bulk of the estate consisted of securities and interests, not readily marketable, in 15 wholly-owned or controlled businesses. Without detailing all of their problems and difficulties (which are summarized in their affidavit of services), it is apparent that the executors were confronted with an unusually complicated estate. The liquidation of assets, to be properly handled, took considerable time; in the interim, the executors supervised the operations of the various businesses. On November 29, 1950, about a year after the will was probated, the trust for Mrs. Schneider was set up by the transfer of $168,387.41 in principal from the estate to the trust. Subsequent transfers of principal increased the size of the trust to $1,368,387.41.
Income produced by the estate was also distributed among the various trusts as it became available. The trustees' account shows that between December 1950 and December 1957 $393,666.67 was transferred by the executors to themselves as trustees of the trust for Mrs. Schneider. The record of payments of income is as follows:

 December 29, 1950 Cash $121,000.00
 November 5, 1951 " 40,000.00
 May 8, 1952 " 92,000.00
 April 14, 1953 " 20,000.00
 May 28, " " 2,000.00
 June 26, " " 42,000.00
 April 16, 1954 " 30,000.00
 December 28, " " 15,000.00
 April 20, 1956 " 15,000.00
 December 31, 1957 " 16,666.67
 ___________
 $393,666.67

It is undisputed that plaintiffs as executors took statutory income commissions on the said $393,666.67.
As the payments of income (save the last payment which will be discussed separately) came into the trust, it was administered pursuant to the terms of the will. It had to *55 be invested and thereafter managed. Discretionary payments out of income for the education, support and maintenance of Mrs. Schneider during her minority had to be made. Tax problems had to be considered. Upon Mrs. Schneider reaching her majority, the balance of accumulated income in the trust became payable to her.
Regarding the aforesaid transfer of $16,666.67 income to the trust on December 31, 1957, the account shows that on the same day the trust paid the same amount over to Mrs. Schneider, since she had previously arrived at her twenty-first birthday. Other than a bookkeeping transaction, therefore, the trustees' handling of this income was nominal. When the accounting was originally filed, plaintiffs as trustees did ask for the allowance of statutory income commissions on this $16,666.67. After exceptions were filed, plaintiffs, without admitting that they are not entitled as a matter of law to commissions on this sum, withdrew their request for commissions thereon.
After hearing on the exceptions, the trial court held that plaintiffs trustees were not entitled to income commissions on the aforesaid income which had been paid over from the estate to the trust. The reason given by the court was that, to grant the trustees' request, would result in a double allowance of commissions. The court cited Parker v. Wright, 103 N.J. Eq. 535 (Ch. 1928), in support of its ruling.
The court did allow plaintiffs income commissions on the $1,714.35 transferred from the Article Sixth trust. Expectant has not appealed this allowance. The court also allowed plaintiffs commissions on trust corpus and on other trust income, which allowances have not been challenged.
Plaintiffs' position is that this income came into their hands first as executors and then as trustees, and that in each capacity they performed essentially different services with respect to this income. They assert that under the statute they have an absolute right to commissions on all income that comes into their hands and that the allowance thereof is not discretionary with the court. N.J.S. 3A:10-2.
*56 Respondent Toby Armour Schneider argues that the income came into plaintiffs' hands in one capacity or the other, but not both, and that plaintiffs are only entitled to a single commission.
An analysis of the record shows that certain facts are undisputed. The trust under Article Seventh (c) is a legal entity distinct from decedent's estate as such, and while plaintiffs are the executors of the estate and also the trustees of the trust, they are entitled to separate compensation for bona fide services rendered in their separate capacities. Pitney v. Everson, 42 N.J. Eq. 361 (E. & A. 1886). It is unquestioned that as to an asset administered by plaintiffs as executors they are entitled to commissions thereon as executors; thereafter, if the same asset properly is transferred to the trust estate and administered as a trust asset, plaintiffs are entitled to commissions thereon as trustees. As a matter of fact, respondent did not dispute plaintiffs trustees' right to commissions on the trust corpus even though such corpus was created by a transfer of assets from decedent's estate to the trust and as to such assets plaintiffs previously were allowed executors' commissions.
It is respondent's contention that plaintiffs' services in creating this income, managing it, and eventually turning the balance of it over to respondent, were a single, continuous operation which plaintiffs could have performed in either capacity, and that it was unnecessary to handle this income both as executors and as trustees. Respondent suggests that as executors plaintiffs could have retained all of this income until respondent became 21 years of age, at which time all of the accumulated income could have been paid to her directly. This argument, however, fails to consider the provision of the trust requiring the trustees in their discretion to use the trust income for respondent's education, support and maintenance until she became of age. Retention of the income by the executors would have clearly violated the terms of the will. In fact, the trustees *57 paid out substantial amounts of income during respondent's minority.
Respondent also argues that had the trust been promptly set up by distributing the estate assets among the various trusts, then this income would have been earned by the trust in the first place and would never have passed through the executors' hands. Respondent disclaims any criticism of the "protracted administration" and only refers to it to demonstrate that but for the delay the question of double commissions would not have arisen.
This argument is unsound. No one seriously could expect that this large estate with all of its problems and ramifications, could have been settled in a year's time, which is the time when the distribution of estate income began. Respondent herself has participated in much of the litigation which has delayed the final settlement of the estate. Moreover, a substantial part of the income in question manifestly came from estate assets which were not thereafter turned over to the trust but rather liquidated, to pay estate debts of more than $2,000,000, to make deposits of $8,000,000 for federal estate tax, and $500,000 for New Jersey inheritance tax, and to settle litigation in the New York courts by the payment of approximately $1,500,000.
Actually, the rule to be applied is a simple one, since under the statute, N.J.S. 3A:10-2, a fiduciary is entitled to commissions at a fixed rate on all income that comes into his hands "without court allowance." The right is an absolute one and the court has no discretion in the matter. See National State Bank of Newark v. Nadeau, 57 N.J. Super. 53 (App. Div. 1959). The inquiry, therefore, is whether or not this income came into plaintiffs' hands properly as executors and thereafter properly as trustees; if so, plaintiffs are entitled to statutory commissions thereon in each capacity. Pitney v. Everson, supra. See Strawbridge v. Strawbridge, 35 N.J. Super. 125 (Ch. Div. 1955).
*58 In the instant case, because of the nature of the estate and the problems confronting them, the executors found it impossible to provide forthwith for claims and to have an immediate liquidation or distribution in kind of estate assets. In the meantime, and as they resolved the various estate problems, the executors managed decedent's business affairs. This is how the income in question came into being. It is clear that it came into plaintiffs' hands properly as executors, and that plaintiffs were entitled to commissions thereon in that capacity.
As estate income was produced, the executors, in carrying out their duties, distributed such income among the testamentary trusts. The effect of this was to discharge the executors of any further obligation with reference to such income save the duty to account.
Upon the income being turned over to the trust for Toby Armour, however, the trustees became obligated to administer this income pursuant to the terms of the trust. They had to consider what would be a proper distribution of income for the education, support and maintenance of the beneficiary; conferences were had with the interested parties and their representatives; tax questions were discussed. Finally a plan of payment of income was decided on by the trustees and carried into effect. The balance of the income was retained and invested by the trustees. This practice, subject to annual review by the trustees, continued until the beneficiary reached her majority, at which time the balance of accumulated income was paid to her. It thus appears that plaintiffs as trustees have administered this income as it came into the trust for a period upwards of seven years.
The conclusion is that this income was properly an estate asset and thereafter properly a trust asset, and that plaintiffs as executors and also as trustees are entitled to statutory commissions thereon in accordance with N.J.S. 3A:10-2.
*59 On the question of whether or not such income should be considered as trust corpus rather than trust income, a point not directly argued, we hold that the trustees properly treated it as trust income in accordance with the terms of the will and their duties thereunder. Strawbridge v. Strawbridge, supra.
We do not agree with the trial court's ruling that the allowance of commissions on this income to the trustees would be a double allowance not authorized by the statute, or that Parker v. Wright, supra, supports this position.
The statute, N.J.S. 3A:10-2, does not bar double allowances in a situation where there are two fiduciary offices with separate functions and duties. Strawbridge v. Strawbridge, supra. The Parker case, cited by the trial court, dealt with a fiduciary commission statute, since amended, which gave the court discretion to fix income and corpus commissions on the basis of actual service rendered. In Parker the court concluded that the services rendered by the fiduciaries as executors and trustees were not distinguishable and in its discretion denied a "double allowance." However, the opinion noted that in a proper situation commissions in both capacities would be awarded. Parker v. Wright, supra, 103 N.J. Eq., at page 537.
We hold that decedent's estate and the testamentary trust under consideration are separate legal entities and that the executors and trustees respectively thereof have separate duties and functions to perform. Finally, we hold that in fact and in substance the $377,000 income in question was administered as an estate asset and thereafter as a trust asset, and that plaintiffs are entitled to commissions thereon in their separate capacities as executors and trustees.
Remanded for the entry of judgment in accordance with this opinion.